FILED

DEC 06 2016

12-6-16

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PINKZEBRA MUSIC, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case Number: |
| SHENZHEN WONDERSHARE | ) | |
| INFORMATION TECHNOLOGY CO. LTD., | ) | |
| WONDERSHARE SOFTWARE CO., | ) | **1:16-cv-11099** |
| ISKYSOFT STUDIO, and AIMERSOFT | ) | **Judge Joan B. Gottschall** |
| STUDIO, | ) | **Magistrate Judge Sheila M. Finnegan** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY**
**OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY**
**INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY,**
**AND SERVICE OF PROCESS BY E-MAIL**

## TABLE OF CONTENTS

I.     Introduction and Summary of Argument ........................................................................ 1

II.     Plaintiff and its copyrighted products ........................................................................ 4

III.     Defendants and Their Unlawful Activities .................................................................... 6

IV.     Pinkzebra Will Likely Succeed on the Merits ............................................................... 8

    A.     Pinkzebra Will Likely Succeed on Their Copyright Infringement Claims ................................... 8

        1.     Pinkzebra Owns the Three Copyrights at Issue in This Suit ................................................. 8

        2.     Defendants Copied Pinkzebra's Copyrighted Music Tracks ................................................. 9

    B.     Pinkzebra Will Likely Succeed on Its Contributory Infringement Claims .................................. 11

    C.     Pinkzebra Will Likely Succeed on Its Vicarious Infringement Claims ...................................... 12

    D.     Pinkzebra Will Likely Succeed on Its Unjust Enrichment Claims ............................................. 13

V.     There is No Adequate Remedy at Law and Pinkzebra Will Suffer Irreparable Harm in the Absence of Preliminary Relief ........................................................................................ 14

VI.     The Balancing of Harms Tips in Pinkzebra's Favor and Issuance of the Injunction is in the Public Interest ............................................................................................................ 15

VII.     A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Pinkzebra's Copyrights is Appropriate ............................................................ 17

VIII.     Preventing the Fraudulent Transfer of Assets is Appropriate ....................................... 18

IX.     Pinkzebra is Entitled to Expedited Discovery ............................................................ 20

X.     Service of Process by E-mail is Warranted in this Case .................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................................. 13

*Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) ............................................. 8, 16

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) ........................... 19

*Ayres v. City of Chicago*, 125 F.3d 1010 (7th Cir. 1997) .............................................................. 15

*Beats Electronics, LLC v. The Partnerships, et al.*, No. 13-cv-6724 (N.D. Ill. Sept 25, 2014) 3, 18

*Bulgari S.p.A. v. Partnerships*, No. 14-cv-4819, 2014 WL 3765854 (N.D. Ill. July 29, 2014) 3, 18

*Bulgari, S.p.A. v. Zou Ziaohong et al.*, No 15-cv-5148 (N.D. Ill. June 17, 2015) .................... 3, 18

*Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) ..................................................................................................................... 3, 18, 23

*Cambridge Grp. Techs., Ltd. v. Motorola, Inc.*, No. 12-cv-7945, 2013 WL 842650 (N.D. Ill. Mar. 5, 2013) ...................................................................................................................................... 14

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No 1:01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001) ................................................................................................................. 7

*Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624 (7th Cir. 2003) ......................................... 9

*Chrome Hearts LLC v. The Partnerships, et al.*, No 13-cv-4784 (N.D. Ill. July 10, 2013) ........... 3

*Coach, Inc. v. Partnerships*, No. 13-cv-6618, 2013 WL 5477573 (N.D. Ill. Oct. 1, 2013) ..... 3, 18

*Coach, Inc., et al. v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) .............................. 25

*Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (2nd Cir. 1988) ......... 11

*Country Inns & Suites By Carlson, Inc. v. 3 AM, LLC*, No. 14-cv-3126, 2014 WL 5431621 (D. Minn. Oct. 24, 2014) ..................................................................................................................... 24

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ......................................................... 19

*De David v. Alaron Trading Corp.*, 796 F. Supp. 2d 915 (N.D.Ill.2010)) ................................... 14

*Deckers Outdoor Corp. v. Does 1-1,281*, No. 12-cv-01973 (N.D. Ill. Apr. 4, 2012) ................... 25

*Deckers Outdoor Corp. v. Partnership*, No. 13-cv-2167, 2013 WL 1337616 (N.D. Ill. Mar 27, 2013) ........................................................................................................................................ 3, 18

*Dreamland Ball Room, Inc. v. Sapiro, Bernstein & Co.*, 36 F.2d 354 (7th Cir. 1929)................. 13

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000)......................................... 8

*Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).............................................................................................................. 8

*Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012).......................................................... 11

*Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir.1996)............................................. 12

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2nd Cir. 1971) .......... 13

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ..................................................................... 20

*Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F.Supp.2d 846 (N.D. Ill. Sept. 23, 1999) ................ 9

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ...................... 19

*Hard Drive Prods., Inc. v. Does 1-55*, No. 11-cv-2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011)............................................................................................................................... 9

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992)...... 13

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999).............................. 24

*In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 649 (N.D. Ill. 2002) *aff'd* 334 F.3d 643 (7th Cir. 2003) ................................................................................................................... 12, 13

*In re LDK Solar Secs. Litig*, 2008 WL 2415186 (N.D. Cal. June 12, 2008.................................. 23

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009).............................................. 23

*In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2nd Cir. 1979)................................................................... 3

*Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007 (7th Cir. 2005) ........................ 8, 10

*JCW Inv., Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030 (N.D. Ill. 2002) ............................ 11, 15, 16

*Knapp v. McCoy*, 548 F. Supp. 1115 (N.D. Ill. 1982) ................................................................. 14

*Lakedreams v. Taylor,* 932 F.2d 1103 (5th Cir. 1991) ................................................................ 15

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995) .......................... 19

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, No. 03-cv-4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005)................................................................................................... 19

*Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) ................................................................................................................................ 3, 18

*Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429, (N.D. Ill. June 20, 2013).......... 3

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ......................................................................................................................... 22

*Manolo Blahnik Intn'l Ltd. v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) ........................................................................................................................................... 3, 18, 23

*Marobie-Fl, Inc. v. Nat'l Ass'n of Fire Equip. Distrib. & NW Nexus, Inc.,* 983 F. Supp. 1167 (N.D.Ill.1997) ......................................................................................................................... 11

*Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec 5, 2013) 3, 18, 23

*Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877 (N.D. Ill. 2005) ........................ 11

*Monster Energy Co. v. Jing*, No. 15-cv-277, 2015 WL 4081288 (N.D. Ill. July 6, 2015) ............. 3

*Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. Sept. 29, 2015) ................. 3, 18

*NBA Properties, Inc., et al. v. The Partnerships, at el.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) 3, 18

*Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) ..................................... 3, 25

*Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743 (S.D. Ohio 2010) ........................................... 24

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380 (1978).................................... 20

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 (2nd Cir. 1960) ......................... 11

*Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004)....... 23, 24

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989)...................................................... 24

*Reebok Int'l Ltd. v. Marnatech Enters., Inc,*, 970 F.2d 552 (9th Cir. 1992)................................. 19

*Rio Props. V. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002)........................................ 22, 23

*Scherr v. Volpe*, 466 F.2d 1027 (7th Cir. 1972)........................................................................... 24

*Selle v. Gibb*, 741 F.2d 896 (7th Cir. 1984)................................................................................. 10

*Seshadri v. Kasraian,* 130 F.3d 798 (7th Cir.1997)...................................................................... 15

*Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097 (N.D. Ill. 2005)............................... 16

*State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Cent., Inc.*, No. 07-cv-457, 2007 WL 4207158 (S.D. Ohio Nov. 26, 2007)........................................................................................... 25

*Sylvan Learning, Inc. v. Learning Solutions, Inc.*, 795 F. Supp. 2d 1284 (S.D. Ala. 2011)......... 24

*Tom Doherty Associates, Inc. v. Saban Entm't, Inc.,* 60 F.3d 27 (2nd Cir. 1995)........................ 15

*Tory Burch LLC v. Partnerships*, No. 13-cv-2059, 2013 WL 1283824 (N.D. Ill. Mar. 27, 2013) 3, 18

*Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-09066 (N.D. Ill. Nov. 15, 2012).................... 25

*TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225 (M.D. Fla. 2013) ....................... 24

*True Religion Apparel, Inc. v. Does 1-100*, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) ............... 25

*Ty, Inc. v. GMA Access., Inc.*, 132 F.3d 1167 (7th Cir. 1997)................................................. 10, 15

*Ty, Inc. v. GMA Access., Inc.*, 959 F. Supp. 936 (N.D. Ill. 1997), *aff'd* 132 F.3d 1167 (7th Cir. 1997) ............................................................................................................................................. 15

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001)...................................................... 7

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007)................ 20

*Weigel Broad. Co. v. Topel*, No. 83-cv-7921, 1985 WL 2360 (N.D. Ill. Aug 21, 1985) ............. 14

*Wildlife Exp. Corp v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir. 1994)................................. 9

*Zimnicki v. Neo-Neon Int'l, Ltd.*, No. 06-cv-4879, 2009 WL 3805591 (N.D. Ill. Nov. 9, 2009). 14

**Statutes**

17 U.S.C. § 401(c) ......................................................................................................................... 9

17 U.S.C. § 502.......................................................................................................................... 4, 17

17 U.S.C. § 504.......................................................................................................................... 4, 19

17 U.S.C. 411(a) ............................................................................................................................. 9

Plaintiff PINKZEBRA MUSIC LLC submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and service of process by email (the "*Ex Parte* Motion").

## MEMORANDUM OF LAW

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff PINKZEBRA MUSIC LLC ("Pinkzebra") brings this action against Defendants Shenzhen Wondershare Information Technology Company Limited ("Wondershare"), Wondershare Software Co. ("Wondershare Texas"), iSkysoft Studio ("iSkysoft"), and Aimersoft Studio ("Aimersoft") for federal copyright infringement (Counts I-IV), contributory copyright infringement (Count V), vicarious copyright infringement (Count VI), and unjust enrichment (Count VII). As alleged in Pinkzebra's Complaint, Defendants are distributing and selling Pinkzebra's copyrighted music tracks as their own. Defendants have gone to great lengths to conceal the true nature of their infringing action, and even created a YouTube video showing users how to falsely claim rights to the pirated music when presented with a take-down notice. In short, Defendants run a sophisticated music pirating operation with a reckless disregard for anything except generating profits.

The Defendants own and operate online video-editing software by the name of Filmora, Aimersoft, and iSkysoft, purporting to own all music packaged within the software. This software allows users to upload personal videos, edit the videos, and add pirated music tracks to their videos. In order to export their completed video, the user must purchase the software from Defendants. Defendants do not hold a license to the music, yet they allow users to use pirated music with the implicit, or potentially even explicit, representation that they hold a license to it. Defendants attempt to avoid liability by going to great lengths to conceal their identities and the full scope and interworking of their copyright counterfeiting operation. Indeed, Defendants even provide

customers with how-to videos explaining how to avoid take-down requests. Plaintiff is forced to file this action to combat Defendants' counterfeiting and infringement of its copyrighted music tracks and protect unknowing customers from purchasing counterfeit and/or pirated copies of Plaintiff's music tracks.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and has sold and continues to sell software with counterfeit and/or pirated copies of Pinkzebra's copyrighted music to consumers within the United States, including the State of Illinois. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Pinkzebra's business within this Judicial District, and have caused and will continue to cause irreparable injury to Pinkzebra. Defendants deceive the public by using Pinkzebra's copyrighted music tracks without a license to sell their software.

Defendants' ongoing unlawful activities should be restrained, and Pinkzebra respectfully requests that this Court issue an *ex parte* Temporary Restraining Order. Specifically, Pinkzebra seeks an order: (1) temporarily restraining Defendants' continued distribution, offering for sale, and sale of unlicensed, counterfeit, and/or pirated copies of Plaintiff's copyrighted music tracks; and (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the TRO, Pinkzebra respectfully requests that this Court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the distribution, offering for sale, and sale of unlicensed, counterfeit, and/or pirated copies of Pinkzebra's copyright music tracks, specifically Defendants' Filmora, Aimersoft, and iSkysoft software and Defendants' financial accounts; and (4) authorize service by electronic mail.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for counterfeiting and infringement, courts regularly issue such orders. *See, e.g., Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015) (granting

2

ex parte TRO); *Monster Energy Co. v. Jing*, No. 15-cv-277, 2015 WL 4081288, at *1 (N.D. Ill. July 6, 2015) (same); *Bulgari, S.p.a. v. Zou Ziaohong et al.*, No. 15-cv-5148 (N.D. Ill. June 17, 2015) (unpublished) (same); *Bulgari S.p.A. v. Partnerships*, No. 14-cv-4819, 2014 WL 3765854, at *1 (N.D. Ill. July 29, 2014) (same); *Coach, Inc. v. Partnerships, No.* 13-cv-6618, 2013 WL 5477573, at *1 (N.D. Ill. Oct. 1, 2013) (same); *Tory Burch LLC v. Partnerships*, No. 13-cv-2059, 2013 WL 1283824, at *1 (N.D. Ill. Mar. 27, 2013) (same); *Deckers Outdoor Corp. v. Partnership*, No. 13-cv-2167, 2013 WL 1337616, at *1 (N.D. Ill. Mar 27, 2013) (same); *Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec 5, 2013) (unpublished) (same); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik Intn'l Ltd. v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, at el.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.*, No. 13-cv-6724 (N.D. Ill. Sept 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same); *Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429, (N.D. Ill. June 20, 2013) (unpublished) (same); *Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (same); *see also, In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2nd Cir. 1979) (holding that *ex parte* TROs are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the Court can provide effective final relief).

Pinkzebra's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations establishes that issuing a temporary restraining order against Defendants is necessary and proper. More specifically, Pinkzebra can demonstrate a strong

likelihood of success on the merits, as further explained herein. Pinkzebra is the owner of the copyright registration applications at issue in this case, and has been at all relevant times. Defendants knew that the copyrighted works were owned by Pinkzebra. Without authorization, consent, or permission, Defendants have reproduced, distributed, and sold the pirated songs without paying Pinkzebra any licensing fees or other compensation. Additionally, Defendants have and continue to irreparably harm Pinkzebra by freely distributing Pinkzebra's copyrighted music tracks and there is no amount of money that can compensate Pinkzebra for these damages. Issuance of an injunction is also in the public interest because it will prevent unknowing consumers from being deceived into purchasing counterfeit, unlicensed, and/or pirated copies of Pinkzebra's music tracks and will protect the integrity of copyright laws which seek to encourage individual effort and creativity.

Further, 17 U.S.C. § 502 authorizes courts to "grant temporary and final injunctions…to prevent or restrain infringement of a copyright." Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C) this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper because Pinkzebra seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504. Finally, an order authorizing service of process by email is proper because Defendants go to great lengths to conceal their identities and operate their business online. In fact, serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## STATEMENT OF FACTS

**II.     PLAINTIFF AND ITS COPYRIGHTED PRODUCTS**

Sam Struyk ("Struyk") is the owner of Pinkzebra Music, LLC. Struyk is a well-known and

4

accomplished American composer and contemporary pianist who has released at least five popular albums and was part of the musical team behind the award-winning Bud Light advertising campaign, "Real Men of Genius." Struyk has composed music for famous and internationally recognized advertising campaigns, including Bud Light, Nintendo, McDonald's, Capital One, State Farm, and numerous others. Struyk has also composed music for independent films and television shows, including the "Oprah Winfrey Show", the "Oprah and Friends" XM Satellite radio show, and Oprah Winfrey's "Leadership Academy" prime time TV special devoted to her school in South Africa.

Struyk also operates as a music producer and composer under the pseudonym Pinkzebra (*Pinkzebra*). Over the past five years, *Pinkzebra* has become one of the most-licensed music composers in the world, with over 70,000 licenses sold. *Pinkzebra* has developed an international fanbase of listeners who have been introduced to his music through its legal usage in viral YouTube videos, TV commercials, independent films, The Voice, and more. *Pinkzebra's* most popular track, "Larger Than Life," has been heard tens of millions of times on YouTube.

Plaintiff Pinkzebra Music, LLC and Struyk both offer musical tracks under the pseudonym *Pinkzebra* on AudioJungle, a platform that allows composers to license their music around the world. The Pinkzebra portfolio includes over 400 musical tracks and is the "#1 top-selling AudioJungle portfolio." Upon purchasing the rights to use a musical track, a buyer must agree to a license agreement with Struyk or Pinkzebra. The license expressly prohibits the distribution of the music track and limits the use of the track to one video project. In other words, if a user wants to use the same song in two projects, they must buy two licenses. There are five different licenses ranging in price from $19.00 USD to $304.00 USD per track, depending on how many viewers there will be and the number of times the project is expected to be downloaded.

The tracks at issue in this case are "Larger Than Life", which has been sold at least 3,760

times on AudioJungle, "Walk Through Life", which has been sold at least 2,107 times on AudioJungle, and "Spooky Fun", which has been sold at least 261 times on AudioJungle. Struyk is the original author and holder of the copyrights for all three works. Struyk applied for copyright registration for all three works on September 22, 2016:

| Application Number | Name | Year |
|:---:|:---:|:---:|
| 1-4018270031 | LARGER THAN LIFE | 2016 |
| 1-4018454675 | WALK THROUGH LIFE | 2016 |
| 1-4018454631 | SPOOKY FUN | 2016 |

Struyk assigned all rights in and to these music tracks to Pinkzebra Music, LLC on October 27, 2016.

## III.     DEFENDANTS AND THEIR UNLAWFUL ACTIVITIES

Defendants are business entities who, upon information and belief, reside The People's Republic of China, Japan, Hong Kong, in the United States, and Canada,. Defendants conduct business throughout the United States through the operation of fully interactive commercial websites which offer downloadable software containing infringing music tracks. Defendants' websites are, upon information and belief, estimated to receive tens of millions of visits per year and generate substantial revenue in the United States.

Defendants facilitate sales of pirated and infringing music tracks by designing and selling video-editing software packages that appear, to unknowing customers, to include genuine music tracks, developed and owned by Defendants. Defendants' websites look sophisticated and accept payment in U.S. Dollars via PayPal, Visa, MasterCard, Discover, American Express, Wire Transfer, and various other methods. Extraterritorial companies like Defendants often operate multiple credit card merchant accounts and PayPal accounts behind layers of permanent gateways so that they can continue operations despite enforcement efforts. Upon information and belief,

Defendants maintain off-shore bank accounts and regularly move funds from U.S.-based accounts to China-based accounts outside the jurisdiction of this Court.

Defendants' video-editing software programs, Filmora, iSkySoft, and Aimersoft, each incorporate three of Pinkzebra's protected music tracks. "Larger Than Life" and "Walk Through Life" are both included as part of the Summer Collection package, while "Spooky Fun" is included as part of the main package and as part of the Halloween Video Effects package. Each of these packages allow Defendants' users to use Pinkzebra's copyrighted works for their own, individual video projects, and pass them off as their own. Defendants' Summer Collection, which includes "Larger Than Life" and "Walk Through Life", has been downloaded at least 89,022 times. Defendants' Halloween Video Effects package, which includes "Spooky Fun", has been downloaded at least 52,885 times. Defendants have not obtained any rights or license(s) from Pinkzebra to use these tracks.

## LEGAL STANDARD

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l bank & Trust v. Charter One Fin., Inc.*, No 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the

7

injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides to grant the injunction. *Id.* (quoting *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-96. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

**ARGUMENT**

**IV.    PINKZEBRA WILL LIKELY SUCCEED ON THE MERITS**

**A.    PINKZEBRA WILL LIKELY SUCCEED ON ITS COPYRIGHT INFRINGEMENT CLAIMS**

In order for a plaintiff to establish copyright infringement, the plaintiff "must show (1) ownership of a valid copyright, and (2) copying of original elements of the copyrighted work." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1011 (7th Cir.2005). Here, Pinkzebra holds the registration for the three copyrights in question, and the Defendant's infringing product is exactly the same. Accordingly, Pinkzebra satisfies both requirements to establish copyright infringement.

*1.    PINKZEBRA OWNS THE THREE COPYRIGHTS AT ISSUE IN THIS SUIT*

Pursuant to 17 U.S.C. 411(a), "no civil action for infringement of the copyright in any [work] shall be instituted until preregistration or registration of the copyright claim has been

made in accordance with this title." The Seventh Circuit has interpreted this to mean even an application for registration is sufficient. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003) (copyright does not "need to be registered…to be valid," but an "application for registration must be filed before the copyright may be sued upon"). Under this approach, the "date of registration is the date the Copyright Office receives the copyright application." *Hard Drive Prods., Inc. v. Does 1-55*, No. 11-cv-2798, 2011 WL 4889094, at *4 (N.D. Ill. Oct. 12, 2011) (citing *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 620-21 (9th Cir. 2010)). Generally, "plaintiffs can prove ownership by a copyright registration." *Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F.Supp.2d 846, 850 (N.D. Ill. Sept. 23, 1999); *see also* 17 U.S.C. § 401(c) (same).

Here, Struyk filed copyright applications for "Larger Than Life," "Walk Through Life," and "Spooky Fun" on September 22, 2016. They were granted the following application numbers: 1-4018270031 (Larger Than Life); 1-4018454675 (Walk Through Life); and, 1-4018454631 (Spooky Fun). On October 27, 2016, Struyk assigned all rights in and to the copyrights to Pinkzebra. Accordingly, Pinkzebra has shown that it owns the copyrights at issue in this lawsuit.

## 2. DEFENDANTS COPIED PINKZEBRA'S COPYRIGHTED MUSIC TRACKS

Once ownership has been established, courts look to copying, which may be shown through direct evidence or by inference "where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). Here, Defendants had access to Pinkzebra's copyrighted music tracks through Pinkzebra's website. Further, Defendants' infringing music tracks are not just substantially similar, but exact copies. Accordingly, Pinkzebra satisfies the copying requirement for copyright infringement.

9

### A.    *DEFENDANTS HAD ACCESS TO PINKZEBRA'S COPYRIGHTED WORKS*

A plaintiff may introduce "direct evidence of access" such as where "the work was sent directly to the defendant" or "reasonable possibility of access," such as where the "complaining work has been widely disseminated to the public. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1997). Further, "[i]f…two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately, since if the later work was a copy its creator must have had access to the original." *Ty, Inc. v. GMA Access., Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997); *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) ("inference of access may be established circumstantially by proof of similarity"). In the instant case, Defendants' infringing music tracks are exact copies of Pinkzebra's copyrighted tracks. Not only are the tracks exactly the same, but Pinkzebra sells licenses to its music on its website, which is on display to the public. Accordingly, there is not only a reasonable possibility of access, but a virtual certainty that the works were accessed by Defendants.

### B.    *DEFENDANTS' INFRINGING PRODUCTS ARE NOT ONLY SUBSTANTIALLY SIMILAR, BUT ARE EXACT COPIES*

The second prong, substantial similarity, focuses on the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Exp. Corp v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508-09 (7th Cir. 1994); *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2nd Cir. 1960) (holding that two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same"). This test "does not involve analytic dissection and expert testimony, but instead turns on whether the accused work has captured the total concept and

10

feel of the copyrighted work." *JCW Investments, Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030,

1034 (N.D. Ill. 2002); *and see also Concrete Machinery Co., Inc. v. Classic Lawn ornaments,*

*Inc.*, 843 F.2d 600, 608 (2nd Cir. 1988). Here, the Defendants' works and Pinkzebra's copy-

righted music tracks are beyond substantially similar, indeed, they are exactly the same. No ordi-

nary observer would be able to detect any differences between the two works because there are

no differences. Accordingly, Defendants' infringing products are substantially similar.

## B. PINKZEBRA WILL LIKELY SUCCEED ON ITS CONTRIBUTORY INFRINGEMENT CLAIMS

In the Seventh Circuit, contributory infringement is defined succinctly as "personal

conduct that encourages or assists the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754,

757 (7th Cir. 2012). More specifically, to support a claim for contributory copyright infringement,

a plaintiff must demonstrate "(1) direct infringement by a primary infringer, (2) the defendant's

knowledge of the infringement, and (3) the defendant's material contribution to the infringement."

*Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005) (citing

*Marobie-Fl, Inc. v. Nat'l Ass'n of Fire Equip. Distrib. & NW Nexus, Inc.,* 983 F. Supp. 1167, 1178

(N.D.Ill. 1997); and also citing *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.

1996)). In other words, a defendant is liable for contributory copyright infringement when it "with

knowledge of the infringing activity, induces, causes, or materially contributes to the infringing

conduct of another." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 649 (N.D. Ill. 2002) *aff'd*

334 F.3d 643 (7th Cir. 2003). In satisfying the knowledge requirement, courts look for willful

blindness where "[o]ne who, knowing or strongly suspecting he is involved in shady dealings,

takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent

of those dealings." *Id.* at 264.

As shown above in Section (IV)(A), Defendants are direct copyright infringers. Given that

Defendants' use of the music tracks consists of exact copies of Pinkzebra's music tracks,

11

Defendants must have had knowledge that its use of these tracks is infringement. Its use is either intentional infringement or willful blindness. While select Pinkzebra tracks, such as "Larger Than Life" and "Walk Through Life", are available for personal listening via iTunes, Spotify, Apple Music, Google Play, and Amazon, Pinkzebra's music can only be licensed for use in projects through AudioJungle, a popular platform that allows composers to license their music around the world. In fact, Pinkzebra's 400+ musical tracks are the "#1 top-selling AudioJungle portfolio."

To use one of these tracks, a buyer enters into a licensing agreement with Pinkzebra. This license expressly prohibits the distribution of the music track and limits the use to a single project, so if a user wants to use the same track in two projects, the user must purchase two licenses. In other words, either Defendants purchased a single-use license to each of these tracks and intentionally disregarded this restriction or Defendants literally copied each of these tracks without purchasing them. Not only is Defendants' ongoing use of the three tracks a violation of the single-use restriction in the license, but it is a material contribution to the infringement of Pinkzebra's copyrights by other third parties. Indeed, each one of Defendants' users is potentially committing copyright infringement by downloading Defendants' software as it is illegally copying Pinkzebra's copyright. In short, Defendants are (1) directly infringing Pinkzebra's copyrights, (2) Defendants either have knowledge that the works are copyrighted or willfully ignored evidence that the works are copyrighted, and (3) Defendants are illegally making Pinkzebra's copyrighted tracks available to all its users, causing each individual user to commit copyright infringement. Accordingly, Defendants are committing contributory infringement.

## C.      PINKZEBRA WILL LIKELY SUCCEED ON ITS VICARIOUS INFRINGEMENT CLAIMS

A defendant has committed vicarious copyright infringement when it "has the right and ability to supervise infringing activity and also has direct financial interest in such activities." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (citing

12

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971)). In contrast to contributory liability, "one can be liable for vicarious copyright infringement even without knowledge of the infringement." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 654 (N.D. Ill. 2002), *aff'd* 334 F.3d 643 (7th Cir. 2003); *Dreamland Ball Room, Inc. v. Sapiro, Bernstein & Co.*, 36 F.2d 354 (7th Cir. 1929) (same). In satisfying the financial benefit element, courts look to whether "the existence of infringing activities act as a draw for potential customers." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 655 (N.D. Ill. 2002), *aff'd* 334 F.3d 643 (7th Cir. 2003); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("Financial benefit exists where the availability of infringing material acts as a draw for customers.").

Defendants created and distribute the software that directly infringes Pinkzebra's copyrighted works. In turn, all users of this software are potentially infringing Pinkzebra's copyrighted works by using Pinkzebra's tracks in their music projects. Indeed, each user may be committing multiple instances of copyright infringement if they are using the tracks in different projects. Further, these tracks are undoubtedly acting as a financial benefit to Defendants and a draw for consumers, as Pinkzebra's music tracks are very popular. As the creator of the software, and the entity with complete control over the software, Defendants are committing vicarious copyright liability.

### D. PINKZEBRA WILL LIKELY SUCCEED ON ITS UNJUST ENRICHMENT CLAIMS

Under Illinois law, "to state a claim for unjust enrichment, a plaintiff must allege that the defendant voluntarily accepted a benefit that would be inequitable for the defendant to retain without compensating the plaintiff." *Cambridge Grp. Techs., Ltd. v. Motorola, Inc.*, No. 12-cv-7945, 2013 WL 842650, at *4 (N.D. Ill. Mar. 5, 2013) (citing *De David v. Alaron Trading Corp.*, 796 F. Supp. 2d 915, 923 (N.D.Ill.2010)). Such an action is "equitable in nature and is based on

the principle that one should not be enriched unjustly at the expense of another." *Weigel Broad. Co. v. Topel*, No. 83-cv-7921, 1985 WL 2360, at *5 (N.D. Ill. Aug. 21, 1985). Simply put, all a plaintiff needs to establish in an unjust enrichment action "is that there be unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience." *Knapp v. McCoy*, 548 F. Supp. 1115, 1118 (N.D. Ill. 1982). Finally, "an action for unjust enrichment is not the equivalent of the exclusive rights protected by the Copyright Act." *Weigel Broad. Co. v. Topel*, No. 83-cv-7921, 1985 WL 2360, at *3 (N.D. Ill. Aug 21, 1985); *see also Zimnicki v. Neo-Neon Int'l, Ltd.*, No. 06-cv-4879, 2009 WL 3805591, at *3 (N.D. Ill. Nov. 9, 2009) (finding no pre-emption where infringement may be occurring outside the United States).

Here, Defendants copied Pinkzebra's music tracks, without providing any compensation. Then, not content with simply stealing Pinkzebra's works, Defendants proceeded to make Pinkzebra's tracks available as part of their software – enabling every user to use Pinkzebra's music tracks without paying Pinkzebra. In short, Defendants are using Pinkzebra's copyrighted tracks to sell its product and have not paid Pinkzebra for it. Accordingly, Defendants are being unjustly enriched at the expense of Pinkzebra and should be found to have committed unjust enrichment.

## V.     THERE IS NO ADEQUATE REMEDY AT LAW AND PINKZEBRA WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

A court "may presume that all damages incurred due to copyright infringement are irreparable, such that any legal remedy would be inadequate." *JCW Inv., Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030, 1036 (N.D. Ill. 2002) (citing *Ty, Inc. v. GMA Access., Inc.*, 959 F. Supp. 936, 943 (N.D. Ill. 1997), *aff'd* 132 F.3d 1167 (7th Cir. 1997). Further, "the stronger the case on the merits, the less irreparable harm must be shown." *Ty, Inc. v. GMA Access., Inc.*, 132 F.3d 1167,

1172 (7th Cir. 1997); *see also Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997) (same). Such harm "is aggravated by appearance and quality control" and "the right of the creator of intellectual property to the preservation of the integrity of his work." *Ty, Inc.*, 132 F.3d at 1172 (citing *Seshadri v. Kasraian,* 130 F.3d 798, 803–04 (7th Cir.1997)). Additionally, copyright infringement causes harm to marketing that "cannot be readily monetized and so is appropriately described as irreparable. *Id.*, at 1173 (citing *Tom Doherty Associates, Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 37–38 (2d Cir. 1995); *Lakedreams v. Taylor,* 932 F.2d 1103, 1109 (5th Cir. 1991)).

Defendants' unauthorized and unlicensed use of Pinkzebra's copyrighted music tracks has and continues to irreparably harm Pinkzebra through lack of quality control, damage to Pinkzebra's reputation, loss of exclusivity, marketing damages, loss of control over the integrity of its work, and loss of future sales. The extent of the harm and possible diversion of customers are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. Pinkzebra will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). As such, Pinkzebra should be granted preliminary relief.

## VI.   THE BALANCING OF HARMS TIPS IN PINKZEBRA'S FAVOR AND ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST

As noted above, if the Court is satisfied that Pinkzebra has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Defendants will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. "In balancing the harms to parties and the public, the court uses a 'sliding scale' approach, so that the more likely it is the movant will succeed on the merits, the less the balance of irreparable harms need weigh toward its side...." *Abbott Lab. v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir. 1992). Additionally, courts "presume that [a]

plaintiff will remain irreparably harmed by defendant's alleged copyright infringement in the absence of a[n]…injunction." *JCW Inv., Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030, 1036 (N.D. Ill. 2002); *and see also Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1111 (N.D. Ill. 2005) ("copyright claims that show a likelihood of success entitle the holder to a rebuttable presumption of irreparable harm."). Additionally, a defendant's "lost profits from a surplus of inventory and loss of sales are monetary and not sufficient equitable consideration" and "[defendant] would not be entitled to any profits from their use of a protected copyright." *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 1097, 1111 (N.D. Ill. 2005). Further, "the public has an interest in preserving the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforcement rights." *Spinmaster*, 404 F. Supp. 2d at 1112; *JCW Inv., Inc. v. Novelty, Inc.*, 222 F. Supp. 2d 1030, 1036 (N.D. Ill. 2002) ("public interest in preserving the integrity of copyright laws will also be served by granting a[n]…injunction").

As Pinkzebra has demonstrated, Defendants have been profiting from the sale of infringing pirated music tracks and are committing copyright infringement. Further, any damage to Defendants would be purely monetary, which is not sufficient equitable consideration. Finally, a restraining order is in the public's interest by restraining infringing companies from stealing an individual's creativity and efforts, thereby preserving the integrity of copyright laws. Given the high likelihood of success on the merits and the foregoing factors, the sliding scale and balance of equities tip decisively in Pinkzebra's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Copyright Act authorizes courts to "grant temporary and final injunctions…to prevent or restrain infringement of a copyright." 17 U.S.C. 502. Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure

provides that that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

## VII. A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF PINKZEBRA'S COPYRIGHTS IS APPROPRIATE

Pinkzebra requests a temporary injunction requiring the Defendants to immediately cease all use of Pinkzebra's copyrighted music tracks. Such relief is necessary to stop the ongoing irreparable harm to Pinkzebra, as well as harm to consumers and the general public, and to prevent Defendants from continuing to benefit from their unauthorized use of Pinkzebra's music tracks. The need for *ex parte* relief is magnified in today's global economy where copyright infringers can operate over the internet in an anonymous fashion and quickly spread pirated music.

Many Courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015); *Monster Energy Co. v. Jing*, 15-cv-277, 2015 WL 4081288, at \*1 (N.D. Ill. July 6, 2015); *Bulgari, S.p.A. v. Zou Ziaohong et al.*, No 15-cv-5148 (N.D. Ill. June 17, 2015); *Bulgari S.p.A. v. Partnerships*, No. 14-cv-4819, 2014 WL 3765854, at \*1 (N.D. Ill. July 29, 2014); *Coach, Inc. v. Partnerships*, No. 13-cv-6618, 2013 WL 5477573, at \*1 (N.D. Ill. Oct. 1, 2013); *Tory Burch LLC v. Partnerships*, No. 13-cv-2059, 2013 WL 1283824, at \*1 (N.D. Ill. Mar. 27, 2013); *Deckers Outdoor Corp. v. Partnership*, No. 13-cv-2167, 2013 WL 1337616, at \*1 (N.D. Ill. Mar 27, 2013); *Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec 5, 2013) (unpublished) (granting *ex parte* TRO); *Calvin Klein Trademark Trust, et al. v. The Partnerships,*

*et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik Intn'l Ltd.*

*v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA*

*Properties, Inc., et al. v. The Partnerships, at el.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013)

(unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.*, No. 13-cv-6724 (N.D.

Ill. Sept 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et*

*al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same).

## VIII.   PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE

Pinkzebra requests an *ex parte* restraint of Defendants' assets so that Pinkzebra's right to

an equitable accounting of Defendants' profits from unlicensed sales of Pinkzebra's copyrighted

tracks is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a

restraint is not granted in this case, Defendants may disregard their responsibilities and

fraudulently transfer financial assets to overseas accounts in China and elsewhere before a restraint

is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their

assets in China, making it easy to hide or dispose of assets, which will render an accounting by

Pinkzebra meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's

complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707,

709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir.

1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc,*, 970 F.2d 552, 559 (9th Cir. 1992). In addition,

Pinkzebra has shown a strong likelihood of succeeding on the merits of its copyright infringement

claim, so according to the Copyright Act 17 U.S.C. 504, Pinkzebra is entitled "to recover actual

---

[1] Pinkzebra has concurrently filed a Motion for Leave to File Under Seal certain documents for the same reason.

damages… and any profits… attributable to the infringement." Pinkzebra's Complaint seeks, among other relief, that Defendants account for and pay to Pinkzebra all profits realized by Defendants from its unlawful acts. Therefore, this Court has the inherent equitable authority to grant Pinkzebra's request for a prejudgment asset freeze to preserve relief sought by Pinkzebra.

In a very similar and analogous cause of action, trademark infringement, the Northern District of Illinois has repeatedly entered asset restraining orders. For example, in *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, the Court entered an asset restraining order, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), which recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov 8, 2005). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*; *see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question…were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."). In addition, Courts in this District and across the country regularly issue asset restraining orders for entire financial accounts in cases involving the sale of counterfeited or otherwise infringing products.

Pinkzebra has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts in China and elsewhere. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

19

## IX.    PINKZEBRA IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, and PayPal, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Pinkzebra would not know the entities upon whom to serve the order.

Pinkzebra respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit and pirated sales operations. The discovery requested on an expedited basis in Pinkzebra's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Pinkzebra's counsel is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in deceptive

activities, Pinkzebra's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Pinkzebra respectfully requests that expedited discovery be granted.

## X. SERVICE OF PROCESS BY E-MAIL IS WARRANTED IN THIS CASE

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Pinkzebra requests this Court's authorization to serve process electronically by sending an e-mail to the e-mail addresses provided for Defendants by third parties, ICANN, and/or Defendants' own website. Pinkzebra submits that providing notice via e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief, rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendants' domain names may be apprised of this action. Authorizing service of process solely via e-mail also will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Pinkzebra will almost certainly be left without the ability to pursue a final judgment.

In practice, Defendants must provide accurate email addresses for their domain names so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, Online Marketplace Account operators accepting PayPal must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, such as Defendants, who operate entirely online, to visit

their Internet Store and ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see also, MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co. Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec 5, 2013) (unpublished) (same); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik Intn'l Ltd. v. The Partnerships, et al.,* No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013); *Popular Enters., LLC v. Webcom Media Grp, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service). Accordingly, allowing service solely by e-mail in the present case is appropriate and comports with constitutional notions of due process.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule

4(f)(3). *Rio Props. V. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Pinkzebra to serve Defendants via e-mail.

Additionally, Defendants are owned by residents of China. The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). The Hague Convention does not preclude service by e-mail, and the declarations to The Hague Convention filed by China do not appear to expressly prohibit e-mail service. *Id.* As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of The Hague Convention. *See, e.g.*, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig*, 2008 WL 2415186, *2 (N.D. Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *and see also Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Accordingly, Pinkzebra respectfully requests this Court's permission to serve Defendants via e-mail.

## IF A BOND IS REQUIRED TO SECURE THE INJUNCTIVE RELIEF, IT SHOULD BE NO MORE THAN $10,000

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. V. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Further, not requiring a bond prior to issuing an injunction is "not reversible error." *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972). The Seventh Circuit has stated that a strong likelihood of success can justify waiving a bond. *Id.* Likewise, many courts have not required bonds to be posted when issuing a preliminary injunction. *See, e.g.*, *Country Inns & Suites By Carlson, Inc. v. 3 AM, LLC*, No. 14-cv-3126, 2014 WL 5431621 (D. Minn. Oct. 24, 2014) (waiving bond); *TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225 (M.D. Fla. 2013) (no bond required); *Sylvan Learning, Inc. v. Learning Solutions, Inc.*, 795 F. Supp. 2d 1284 (S.D. Ala. 2011) (because plaintiff established a "high" likelihood of success on the merits as to part of its claim, no bond was required); *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743 (S.D. Ohio 2010) (because plaintiff prevailed on each of the preliminary injunction factors, it was not required to post a bond); *State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Cent., Inc.*, No. 07-cv-457, 2007 WL 4207158 (S.D. Ohio Nov. 26, 2007) (no bond required).

If the Court does decide to require Pinkzebra to post a bond, Pinkzebra respectfully requests that this Court require Pinkzebra to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100*, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond);

24

Because of the strong and unequivocal nature of Pinkzebra's evidence of counterfeiting, copyright infringement, and unjust enrichment, Pinkzebra respectfully requests that it not be required to post a bond, or at most, a minimal bond that the Court deems to be appropriate.

## CONCLUSION

Defendants' pirating, illegal copying, and infringement are irreparably harming Pinkzebra's business and consumers. Without entry of the requested relief, Defendants' sale of its software with pirated and counterfeit music tracks will continue to lead prospective purchasers and other consumers to buy it and believe they have a license to Pinkzebra's copyrighted tracks, when in fact, they do not. Further, it directly robs Pinkzebra of revenue and the good will and reputation associated with its copyrighted music tracks. Therefore, entry of an *ex parte* order is necessary to protect Pinkzebra's copyright rights, to prevent further harm to Pinkzebra and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with similar cases, Pinkzebra respectfully requests that this Court enter a Temporary Restraining Order and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Pinkzebra intends to present a motion for preliminary injunction.

Dated:  December 5, 2016             RESPECTFULLY SUBMITTED,


                                    By:___ /s/ Brian T. Noack_____
                                      Brian Noack
                                      Adam Wolek
                                      WOLEK & NOACK
                                      333 S Wabash Ave., Suite 2700
                                      Chicago, IL 60604
                                      P: 312.860.9006
                                      F: 708.843.0509
                                      *Counsel for PINKZEBRA MUSIC, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on December 5, 2016, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: December 5, 2016                    WOLEK & NOACK

                                            By:  /s/ Brian T. Noack
                                                 Brian T. Noack