**UNITED STATED DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PINKZEBRA MUSIC, LLC, ) | |
| ) | Case No. 16-cv-11099 |
| Plaintiff, ) | |
| ) | Judge: Hon. Joan B. Gottschall |
| v. ) | |
| ) | |
| SHENZHEN WONDERSHARE ) | |
| INFORMATION TECHNOLOGY CO. ) | JURY TRIAL DEMANDED |
| LTD., WONDERSHARE SOFTWARE ) | |
| CO., LTD., ISKYSOFT STUDIO and ) | |
| AIMERSOFT STUDIO ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE AND TO COMPEL DISCOVERY COMPLIANCE

Plaintiff's Reply Brief continues its track record of misrepresenting the facts, mischaracterizing case law, and misleading the Court—all while raising new arguments and citing new cases not presented in Plaintiff's motion. For example, Plaintiff claims without any support that "filing the motion triggered Defendants to produce at least some of the requested documents, although many are still missing." (Rep. Br. at 1.) In fact, as Wondershare set forth in an extensive declaration, Wondershare was in the process of producing the requested documents at the time Plaintiff filed its motion—and it produced the documents within minutes after the motion was filed. (Dkt. No. 81-4, ¶¶ 32-33, 35-38.) Plaintiff offers no evidence that its motion "triggered" any production, and Plaintiff fails to explain what documents are "still missing."[1]

---

[1] Plaintiff asserts that Wondershare produced documents after Plaintiff filed its motion on September 11, September 12, September 14, and September 21. However, the September 11 production, issued less than an hour after Plaintiff filed its motion, comprised nearly all of the documents in Wondershare's possession that are the subject of Plaintiff's motion. The September 12 and 14 productions consisted of irrelevant communications between Wondershare and third party Envato. The September 21 production consisted of a single communication dated *September 20, 2017.*

Plaintiff's Reply Brief includes the following misrepresentations:

- Plaintiff claims that Wondershare does "not dispute that [its] accused software contained Pinkzebra's songs" (Rep. Br., at 2), when Wondershare's verified Interrogatory responses dispute that exact point;

- Plaintiff suggests that it has been pushing Wondershare to produce the requested software products for over five months, and that its motion was "a culmination of many months of efforts and conferences by Pinkzebra" (Rep. Br. at 2), even though Plaintiff did not mention Request No. 5 or ask for copies of the accused software products *at all* between April 2017 and July 2017. (Dkt. No. 81-4, ¶¶ 6, 7, 11, 13, 14, 17.);

- Plaintiff asserts that "documents were not produced for Request No. 15, which relate to Wondershare's copyright licensing policy and practices" (Rep. Br., at 8), even though Wondershare produced, in both English and Chinese, the earliest document outlining its copyright licensing policy on August 15, 2017;

- Plaintiff falsely claims that Wondershare "failed to produce [its communications with Envato] during fact discovery" (Rep. Br. at 8), even though Wondershare produced the relevant communications on July 14, 2017—before Pinkzebra had produced a *single* document; and

- Plaintiff states: "Defendants' chart concedes they refused to produce many documents from the requests" (Rep. Br. at 3), when Wondershare made no such concession, and simply could not identify or locate documents responsive to many requests after a reasonable search.

Perhaps most egregiously, Plaintiff asserts that Defendants "failed to produce" some "key documents" originating from Wondershare, such as the End User License Agreement (EULA) Plaintiff attached as Exhibit B to its Reply Brief. (Rep. Br. at 2.) Wondershare has not failed to produce anything: that document was produced the same night Plaintiff's motion was filed. (Dkt. No. 81-4, ¶¶ 32-33, 35-36, 38; *id* at Ex. W; Ex. A, WOND000664.)

More importantly, Plaintiff admits that it has withheld over 100,000 documents relevant to Plaintiff's damages: Pinkzebra's licenses and communications about its licenses and musical works. Plaintiff claims that the documents are "of dubious relevancy." (Rep. Br., at 9.) In reality, Plaintiff simply wishes to avoid reviewing or producing them, and Wondershare has not filed a motion because it still hopes to avoid involving the Court in that dispute. Wondershare has timely produced all of its responsive documents, and Plaintiff's motion should be denied.

## ARGUMENT

I.      **Plaintiff's Request for an Adverse Inference Remains Meritless, and Contradicts Seventh Circuit Precedent.**

In its Reply Brief, Plaintiff argues for the first time—in a gross mischaracterization—that Wondershare does "not dispute that [its] accused software contained Pinkzebra's songs." (Rep. Br., at 2; *see id*. ("despite conceding that their software contained the accused music tracks…"). In its original motion, Plaintiff requested that the Court "enter an inference that all versions of the Accused Products from January 1, 2015 to December 26, 2016, including Filmora, iSkysoft, Aimersoft, Wondershare's Summer Collection Package, and Wondershare's Halloween Collection Package, contained Pinkzebra's [three asserted] music tracks." (Mot. at 5.) In fact, however, Wondershare's verified interrogatory responses expressly contradict Plaintiff's requested adverse inference, stating that

> the asserted music tracks were not included or "embedded" within the Filmora video editing software package, nor within the iSkysoft or the Aimersoft video editing software packages. Rather, those asserted music tracks were available for download separate and apart from all such video editing software packages, free of charge . . . .

(Ex. B, Wondershare's Responses to Plaintiff's First Set of Interrogatories, at 12.) Wondershare has never conceded that Filmora, iSkysoft Video Editor or Aimersoft Video Editor "contained" the accused music tracks. Rather, Wondershare has not denied that its *Summer Collection* contained the music tracks "Larger Than Life" and "Walk Through Life," or that its *Halloween Collection* contained the music track "Spooky Fun." Those two collections were only capable of interacting with Wondershare's *Filmora* software; Wondershare's iSkysoft and Aimersoft video editing software products were not capable of downloading or interacting with the asserted music tracks.

The entirety of Plaintiff's argument for an adverse inference consists of its claim that Wondershare purportedly delayed its production of versions of the accused products. Yet again, Plaintiff misrepresents the course of discovery, claiming that it has been pushing Wondershare to produce the requested software products for over five months. (Rep. Br., at 3 (claiming the "parties first had a conference on April 28 about the missing documents"—though Plaintiff was careful not to say "about the production of software product versions"—and later arguing that Plaintiff's counsel "attempted to get these documents for over 5 months").) As set forth in the Horwitz Declaration filed in response to Plaintiff's motion, however, Plaintiff did not raise Request No. 5 or ask for copies of the accused software products during the parties' April 28 teleconference—nor did Plaintiff raise those issues *at all* during the months of May, June or July 2017. (Dkt. No. 81-4, ¶¶ 6, 7, 11, 13, 14, 17.)

But all of this is beside the point because Plaintiff has not met the heightened standard for an adverse inference. "In order to draw an inference that the missing documents contained information adverse to the defendants, [Plaintiff] must demonstrate that the defendants intentionally destroyed the documents in bad faith." *Norman-Nunnery v. Madison Area Technical College*, 625 F. 3d 422, 428 (7th Cir. 2010) (further stating that the "crucial element in a spoliation claim is not the fact that the documents were destroyed *but that they were destroyed for the purpose of hiding adverse information*") (emphasis added); *Peerless Indus. v. Crimson AV LLC*, No. 11-cv-1768, 2014 WL 3497697, *5 (N.D. Ill. July 14, 2014) (refusing a request for an adverse inference instruction because the court could not determine "as a certainty" that the defendant "acted with a specific intent to withhold unfavorable information" from Plaintiff, "as required for an adverse inference instruction"). Plaintiff has not even attempted to show that Wondershare "acted with a specific intent to withhold" the software products. In fact, all of the

accused software versions were produced to Plaintiff less than an hour after Plaintiff filed its

meritless motion. The request for an adverse inference should be denied.

## II.    Wondershare Has Not Withheld Any User Agreements or License Policy Documents, And Wondershare Timely Produced Its Communications With Audio Jungle.

Plaintiff falsely claims that Wondershare failed to produce its user agreements and license

policy documents, and asserts, without any explanation, that "many are still missing." (Rep. Br. at

7.) For example, Plaintiff asserts that Wondershare "failed to produce an agreement with its users,"

an EULA in which Wondershare purportedly "claimed rights in Pinkzebra's music." (*Id*. at 7-8; *id*.

at Ex. B.) When Plaintiff filed its motion, Wondershare was in the process of producing the

document that Plaintiff attached as Exhibit B to its Reply Brief, and the document was produced

the same night Plaintiff's motion was filed. (Dkt. No. 81-4, ¶¶ 32-33, 35-36, 38; *id* at Ex. W; Ex.

A, WOND000664.) Contrary to Plaintiff's claims, just minutes after Plaintiff filed its motion,

Wondershare had produced the relevant versions of its EULAs.

Next, Plaintiff asserts that "documents were not produced for Request No. 15, which relate

to Wondershare's copyright licensing policy and practices." (Rep. Br., at 8.) In fact, Wondershare

produced, in both English and Chinese, the first version of its document outlining its copyright

licensing policy on August 15, 2017. (Dkt. No. 81-4, ¶ 26; *id* at Ex. R; WOND000417 and

WOND000435.[2]) Weeks later, after Plaintiff complained that companies typically create many

versions of such policy documents, Wondershare identified and produced updated versions of that

policy document,[3] *minutes after Plaintiff filed its motion*. (Dkt. No. 81-4, ¶ 36; *id* at Ex. W;

WOND000584, WOND000632, and WOND000825.) Thus, shortly after Plaintiff filed its motion,

Wondershare had produced all Chinese versions of its copyright licensing policy documents.

---

[2] Wondershare identified, but is not attaching, these documents as exhibits, because they are highly confidential.
[3] While it had no obligation to do so, Plaintiff voluntarily translated those documents and produced them to Plaintiff on September 18.

Finally, Plaintiff notes Wondershare's defense that it communicated with Envato (which expressly told Wondershare that its intended use would be covered by the licenses on Audio Jungle),[4] before falsely claiming that Wondershare "failed to produce these documents during fact discovery." (Rep. Br. at 8.) In fact, on July 14, 2017—before Pinkzebra had produced a *single* document—Wondershare produced those key communications with Envato. (Dkt. No. 81-4, ¶ 16; *id* at Ex. G; WOND0000041-42.[5]) Weeks later, after Plaintiff complained that Wondershare might have more communications with Envato, Wondershare identified and produced additional, wholly irrelevant communications with Envato, on September 12 and 14, 2017. Wondershare produced all of its *relevant* communications with Envato before Plaintiff produced any documents, and has now produced all of its other, irrelevant communications.[6]

## III.  Wondershare Has Not Failed to Produce Anything, and Was Not Delinquent in Its Production.

Plaintiff continues its campaign of mischaracterizations by claiming that Wondershare concedes that it "refused to produce many documents from the requests." (Rep. Br. at 3.) In fact, Wondershare has unequivocally stated that it has produced all documents it has, including when no such documents were found. For the Court's ease of reference, Wondershare reproduces the chart from Plaintiff's Reply Brief, to explain its position on each of Plaintiff's requests:

---

[4] Plaintiff argues this defense "is meritless" because the license that Wondershare purchased has language purportedly prohibiting Wondershare's intended use. But Wondershare informed Envato of its intended use, and Envato encouraged Wondershare to purchase the license anyway, and did not raise *any* concerns that use of the songs in a video-editing application would violate the license. Plaintiff raises its own red herring, arguing that Wondershare "should be required to show corporate documents that [sic] of the entity that purportedly bought such a license" (Rep. Br. at 8, n. 1), presumably because the entity listed on the license certificates is "Wondershare Inc." (Dkt. 81-1 and 81-3.) But the identification of "Wondershare Inc." on the license certificates, and the existence of any entity named "Wondershare Inc.," is entirely irrelevant because *there is no dispute that Wondershare purchased the licenses*.

[5] Wondershare identified, but is not attaching, this document as exhibits, because it is confidential.

[6] Plaintiff also issued a subpoena to Envato, requesting all communications between Wondershare and Envato (Dkt. No. 89-1, p. 38), and Envato has produced documents to Plaintiff. (*See* Dkt. No. 89, at 3.)

| Document Requests on Pages 5-6 of Plaintiff's Motion | Status at Time of Motion | Plaintiff's Position | Wondershare's Position |
|---|---|---|---|
| Request No. 4: Customer inquiries about Pinkzebra songs | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced. | Wondershare conducted a reasonable, diligent search, and identified no responsive documents. |
| Request No. 5 (in the alternative): All versions of Wondershare's Accused Products. | Wondershare was actively collecting and producing these documents as Plaintiff filed its surprise motion – and in fact produced them the day the motion was filed. | Late production: 5 meet-and-confer conferences, letter, and over 5 months late | Plaintiff did not raise these Requests or Wondershare's purported delinquency until August. Wondershare promptly produced these documents, coincidentally, minutes after Plaintiff filed its motion. Plaintiff has not been prejudiced by any alleged delay. |
| Request No. 19: Documents and communications between Wondershare and Marmoset Music. | Wondershare was actively collecting and producing these documents as Plaintiff filed its surprise motion – and in fact produced them the day the motion was filed. | Still incomplete. What was produced after 5 meet-and-confer conferences, letter and over 5 months late | Not incomplete. Coincidentally, minutes after Plaintiff filed its motion, all documents in Wondershare's possession, custody and control had been produced. |
| Request No. 20: Wondershare's communications about "Larger than Life." | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced. | Wondershare conducted a reasonable, diligent search, and identified no responsive documents. |
| Request No. 21: Wondershare's communications about "Walk Through Life." | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced. | Wondershare conducted a reasonable, diligent search, and identified no responsive documents. |
| Request No. 22: Wondershare's communications about "Spooky Fun." | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced. | Wondershare conducted a reasonable, diligent search, and identified no responsive documents. |
| Request No. 23: Wondershare's communications regarding this litigation. | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced. | Wondershare conducted a reasonable, diligent search, and identified no responsive documents. |
| Request No. 24: Communications and documents relating to Plaintiff. | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced, and explicitly contradicted by emails produced by Pinkzebra | Wondershare has been unable to identify or locate the single email chain Pinkzebra produced, and no other documents appear to exist. |
| Request No. 25: Communications and documents relating to Sam Struyk, a/k/a Sam Stryke and Pinkzebra. | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | | |

| | | | |
|---|---|---|---|
| Request No. 26: Documents relating to Wondershare's selection, adoption, or first use of the Asserted Music Tracks. | *Wondershare already told Plaintiff it has produced all documents in its possession, custody and control.* | None produced. | Wondershare conducted a reasonable, diligent search, and identified no responsive documents. |
| Request No. 37: Wondershare's income tax returns for 2014, 2015 and 2016. | Wondershare had explained to Plaintiff that it objects to producing these documents. | Defendants requested the same documents from Plaintiff, yet refused to produce any themselves. | Plaintiff's tax returns are highly relevant to its inflated damages claims. |
| Request No. 38: Wondershare's tax returns for 2014, 2015 and 2016. | Wondershare had explained to Plaintiff that it objects to producing these documents. | | Wondershare's tax returns and corporate filings are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). |
| Request No. 39: Wondershare's corporate filings for 2014, 2015 and 2016. | Wondershare had explained to Plaintiff that it objects to producing these documents. | | |
| Request No. 40: Documents sufficient to show all websites owned and/or operated by Wondershare. | Wondershare was actively collecting and producing these documents as Plaintiff filed its surprise motion – and in fact produced them the day the motion was filed. | Late production. | Plaintiff has the document it requested. No action by the Court is necessary. |

For the most part, the chart in Plaintiff's Reply Brief merely complains that documents were produced "late" or were not produced at all, when most of the requested documents simply do not appear to exist.[7] Wondershare addresses the small number of exceptions below:

**Request No. 19: Communications between Wondershare and Marmoset.**

Plaintiff claims, without any explanation to the Court, that Wondershare's production of these documents is "still incomplete." (Rep. Br. at 4.) Plaintiff is referring to a single document: a February 2017 letter sent to Wondershare by Marmoset, which Plaintiff has already produced (via its subpoena to Marmoset) as PZ0000053-54. Plaintiff has attempted to locate that letter, to no avail. Wondershare's production is complete, and Plaintiff has not been prejudiced by Wondershare's failure to produce a copy of a document already produced by Plaintiff.

---

[7] Plaintiff "should have accepted that the documents do not exist and should have refrained from filing his motion." *Malibu Media, LLC v. Harrison*, No. 1:12-CV-01117-WTL, 2014 WL 5392097, at *4 (S.D. Ind. Oct. 23, 2014) (citing *Abt v. Jewell*, No. CV 13–118(RMC), 2014 WL 1400847, at *4 (D.D.C. Apr.11, 2014) ("The Court will not compel" production of "documents that may or may not exist based on [plaintiff's] unsubstantiated speculation")).

**Request Nos. 24-25: Documents Relating to Plaintiff, and Communications Between Wondershare and Plaintiff.**

Again, Plaintiff is referring to a single document: an email chain between Pinkzebra and a contractor for Wondershare, which Plaintiff has already produced as PZ0000094-95. Plaintiff has attempted to locate that email, to no avail. Wondershare's production is complete, and Plaintiff has not been prejudiced by Wondershare's failure to produce a copy of a document already produced by Plaintiff.

**Request Nos. 37-39: Wondershare's Tax Returns and Corporate Filings.**

Plaintiff disingenuously argues that these documents are relevant because Wondershare "requested the same documents from Plaintiff."[8] (Rep. Br. at 6.) Wondershare requested those documents because Plaintiff is seeking millions of dollars in damages, and Wondershare is entitled to establish that Plaintiff's claimed damages are significantly inflated relative to Plaintiff's historical income. By contrast, Plaintiff has not established that Wondershare's tax returns or "corporate filings" contain information that is tailored to the facts of this case.

At the outset, Wondershare has produced numerous financial documents, providing Plaintiff with all of the information it needs for its damages case. On July 14, Wondershare produced its audited financial statements for the years 2014, 2015 and 2016 (WOND000033-35), and documents reflecting information Wondershare maintains in the ordinary course of business, including (1) the worldwide number of downloads for all accused products (WOND000060-62 and WOND000367); (2) Wondershare's total revenues, by country, for each asserted product (WOND000366); and (3) Wondershare's total U.S. revenues for the years 2015 and 2016 (when

---

[8] This is an oversimplified argument that merits no attention—the same categories of documents are not always relevant for both parties. For example, in a personal injury case in which a plaintiff motorist sued a defendant motorist for causing long-term back injuries, the defendant may rightfully request the plaintiff's medical records to establish that the defendant already had an existing back condition requiring long-term care. But the defendant's medical records would have no relevance to the case.

the alleged infringement occurred) (WOND000369).Wondershare later translated and produced English versions of its financial statements (WOND000391-393), and later produced a document showing all of Wondershare's revenues broken down by product series (WOND000456[9]). All of this was produced before the close of fact discovery on August 18.

Plaintiff argues at a very high level that "financial documents about Defendants' earnings are relevant to damages about earnings made off of the accused products."[10] (Rep. Br. at 7.) But Wondershare sells more than thirty different types of software, and sales of its video editing products have never comprised a significant percentage of Wondershare's overall sales revenues. (Doc. No. 45-1, at 10, ¶ 18; *id.* at 11, ¶ 20.) Plaintiff has the burden to show that the requested documents are relevant. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014) (relevance is "a precondition to discovery"); *see Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 767 (N.D. Ill. 2010) (the party filing the motion to compel has the "burden of proof to demonstrate relevance"). Plaintiff has not shown that Wondershare's tax returns or corporate filings are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be relevant, those documents must show earnings for *the accused products*, but there is no evidence that Wondershare's Chinese tax returns or "corporate filings" report revenue *on a product-by-product basis*. Wondershare's *overall* revenues, and its revenues from *unrelated, non-accused software products*, are entirely irrelevant to this case. Plaintiff seeks "the opportunity to evaluate and verify [Wondershare's] earnings" (Rep. Br., at 7) but Plaintiff has no right to "evaluate" or "verify" earnings that have absolutely no connection to this case. Plaintiff's request that the Court compel production of Wondershare's tax returns and "corporate filings" should be denied.

---

[9] Again, Wondershare has identified, but is not attaching, these several documents as exhibits, because they are highly confidential.

[10] Plaintiff follows that sentence with the nonsensical statement: "Which again, is why Defendants asked for the same documents from Plaintiff." (Rep. Br. at 7.) Plaintiff does not have any "accused products," and Wondershare sought the tax returns to contrast Plaintiff's income with its inflated damages estimates.

## IV.    Plaintiff's Arguments are Unavailing.

Plaintiff complains that the claim that both parties "were still producing" at the time of Plaintiff's motion is "misleading." (Rep. Br. at 9.) This is apparently so because, allegedly, "Pinkzebra was diligent, whereas Defendants were not." (*Id.*) But Plaintiff offers no support or evidence to establish that it was "diligent." In fact, Plaintiff produced documents on September 18 and September 20 (Dkt. No. 81-4, ¶¶ 39, 41; *id* at Ex. Y, Ex. AA)—and Plaintiff concedes that it is still withholding 100,000 documents responsive to Wondershare's requests for documents pertaining to Pinkzebra's licenses and communications about its musical works. (Rep. Br. at 9.) Those licenses and communications, even for musical works Plaintiff has not asserted here, are likely to contain relevant information regarding Plaintiff's damages, i.e., the amount of money Plaintiff would have requested for a license covering Wondershare's intended use (assuming Plaintiff is correct that the licenses Wondershare purchased do not cover that use).

Plaintiff attempts to blame Wondershare for propounding "broad" requests that "would require [Plaintiff] to review over 100,000 mainly duplicitous [sic] documents of dubious relevancy," and portrays the problem as Wondershare failing to "narrow" or "tailor" its requests until August 31.[11] (Rep. Br., at 9.) But the fact that Plaintiff has 100,000 responsive documents does not mean the requests were too broad or needed to be tailored. The simple fact, and the only

---

[11] On August 31, Wondershare provisionally relented in the face of Plaintiff's obstinacy, and requested that Plaintiff, *at first*, produce all communications that were sent from Pinkzebra to Envato. Those documents revealed an intimate business relationship between Pinkzebra and Envato, which explains why the latter willingly responded to Plaintiff's informal subpoena, and refused to respond to Wondershare's informal subpoena. (*See* Dkt. No. 89.) Plaintiff claims that after Wondershare "narrowed" its requests, "Pinkzebra reviewed and produced [documents] shortly thereafter." (Rep. Br. at 9.) In fact, it produced those approximately 500 documents *eighteen* days later—one month after the close of fact discovery, and one week after filing its motion complaining of delays and deficiencies—and it continues to withhold the remaining 100,000+ documents.

"undue burden," is that Plaintiff does not want to review or produce them—and Wondershare has been working to avoid involving the Court in that dispute, unless absolutely necessary.[12]

In sum, Plaintiff is blatantly misrepresenting the facts when it claims, without any evidentiary support, that it was diligent, Wondershare was not, and that "[n]one of Pinkzebra's efforts resulted in Defendants' production of documents." (Rep. Br. at 9-10.) To be clear, Wondershare produced 369 pages of documents and/or native files on July 14, 2017, before Plaintiff had produced a *single* document—and Plaintiff is still withholding 100,000 documents based on its unsupported claim that those documents are unlikely to be relevant. Wondershare has fully complied with its discovery obligations; Plaintiff has not. But Plaintiff, yet again, insists on bending the truth to portray Wondershare as "delinquent." No doubt, there is something *duplicitous*[13] here, but it is not the documents Wondershare requested.

## V. No Fees Are Warranted or Required, and Plaintiff's Authorities Are Inapposite.

In its Response brief, Wondershare accurately noted that Plaintiff requested its attorney fees for preparing and filing its motion without citing to any legal authority supporting that request. In response to that charge, Plaintiff's Reply Brief cites Rule 37 and three cases in which fees were awarded. (Rep. Br. at 10.) However, Rule 37(d) relates to a party's failure "to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection." None of those occurred here: there have been no depositions, and Wondershare has timely served answers to Plaintiff's interrogatories. Plaintiff did not request an "inspection," Wondershare timely served objections and responses to Plaintiff's document requests, and Wondershare has produced

---

[12] Plaintiff argues in a footnote that it explained to Wondershare "that *collecting data* for over 100,000 licenses over a variety of marketplaces, and communications thereto, would be unduly burdensome," disproportionate for the case and "impossible." (Rep. Br. at 9, n. 2 (emphasis added).) But Plaintiff has already *collected* the 100,000 documents—it simply does not want to review and produce them. Just as Plaintiff has alleged: "After five months and five conferences, only some documents were produced by" Plaintiff. (Rep. Br. at 9.)

[13] Coming from Plaintiff's counsel, this is quite the Freudian slip.

all responsive documents in its possession, custody or control. Meanwhile Plaintiff continues to withhold 100,000 documents on specious grounds. No fees are "required" by Rule 37(d). *See also* Rule 37(d)(3) (containing exceptions where "other circumstances," like Plaintiff's continued withholding of 100,000 documents, "make an award of expenses unjust").

Moreover, the three cases Plaintiff cites are readily distinguishable on the facts. For example, Plaintiff cites *Peerless Indus., Inc. v. Crimson AV, LLC* for awarding fees "after defendants responded to document requests 'over a month after the agreed upon deadline.'" (Rep. Br. at 10, citing No. 11-cv-1768, 2012 WL 2502715, at *2-*3 (N.D. Ill. June 27, 2012).) But in that case, the plaintiff had already filed a motion to compel on January 23, 2012, "the parties agreed before the Court that defendants would produce the documents in question by February 15, 2012," and defendants failed to make a complete production by that date. 2012 WL 2502715, at *2. Then, plaintiff filed a motion for sanctions on March 5, 2012, which the court granted in part, the court "ordered defendants to produce a complete set of documents by March 27, 2012," and defendants' production was still incomplete after that date. *Id*. Thus, in that case, the defendants had already violated an agreement they made "before the Court," as well as a court-ordered deadline. Here, however, the parties never agreed upon any final deadline for production (Plaintiff itself issued three productions after the August 18 close of fact discovery, including two productions *after* it filed its motion), and Wondershare has not violated a Court-ordered deadline. The *Peerless* case is wholly inapposite.

Similarly, Plaintiff cites *Sonii v. Gen Elec.* for awarding attorney fees where a "defendant should have been 'more forthcoming with information' and 'failed to produce relevant information after repeated discovery requests.'" (Rep. Br. at 10, citing No. 95-cv-5370, 2003 WL 21541039, at *8-*9 (N.D. Ill. June 11, 2003).) Again, however, the court there ordered fees after

13

already granting plaintiff's motions for sanctions, where it ordered certain documents "to be produced by March 20, 1998," and "[as] of the date of plaintiffs' motion, March 27, 1998, [they] had not yet been produced." 2003 WL 21541039, at *9. Unlike that case, the Court here never ordered production of anything, and Wondershare is not in violation of any Court order.

Finally, Plaintiff cites *Medline Indus., Inc. v. Andens of Ill., Inc.* for awarding attorney fees "to a party forced to compel responses to discovery requests after an eight-month delay." (Rep. Br. at 10, citing 88-cv-9563, 1990 WL 19979, at *2-*3 (N.D. Ill. Feb. 27, 1990).) But in that case, Medline served discovery requests in November 1988, and its opponent Betterfield did not serve *responses until July 26, 1989*. 1990 WL 19979, at *1. Here, Wondershare has timely served responses to Plaintiff's discovery requests. Plaintiff's only complaint is that Wondershare did not produce all responsive documents until four months after Wondershare's responses were served—even though Plaintiff continues to withhold 100,000 documents more than four months after its own responses have been served. *Medline* does not support Plaintiff's fee request.

In short, all of the cases Plaintiff cited in its Reply Brief in support of its request for attorney fees are entirely distinguishable from the procedural history and the facts of this case. Further, Plaintiff's continued withholding of documents it has unilaterally deemed to be "of dubious relevancy" (Rep. Br. at 9) constitute circumstances that would make an award of fees unjust. *See* Fed. R. Civ. P. 37(d)(3). Accordingly, no fees should be awarded.

**VI.    Conclusion**

In view of the foregoing, Wondershare respectfully requests that this Court deny Plaintiff's motion in its entirety.

DATED: October 2, 2017    Respectfully submitted,


SHENZHEN  WONDERSHARE  INFORMATION
TECHNOLOGY CO. LTD.

By */s/ Barry R. Horwitz*
  Richard D. Harris
  Cameron M. Nelson
  Barry R. Horwitz
  Weisun Rao
  GREENBERG TRAURIG, LLP
  77 West Wacker Dr., Suite 3100
  Chicago, Illinois 60601
  Tel: 312-456-8400

Exhibit A

# End User License Agreement

This is a legal agreement between you, the end user, and Wondershare Software Co., Ltd. and its subsidiary Wondershare Software (H.K.) Co., Ltd., the developer of the program ("Wondershare"), regarding your use of Wondershare products ("Software"). By installing the Software, you agree to be bound by the terms of this agreement.

**1. GRANT OF LICENSE**

Wondershare hereby grants to you (an individual) the revocable, personal, non-exclusive, and nontransferable right to install and activate the Software on two separated computers solely for your personal and non-commercial use, unless you have purchased a commercial license from Wondershare. Sharing this Software with other individuals, or allowing other individuals to view the contents of this Software, is in violation of this license. You may not make the Software available on a network, or in any way provide the Software to multiple users, unless you have first purchased at least a multi-user license from Wondershare.

**2. COPYRIGHT**

The Software is owned by Wondershare and protected by copyright law and international copyright treaties. You may not remove or conceal any proprietary notices, labels or marks from the Software.

**USE OF MUSIC TRACKS**

Video Tutorial: How to handle Youtube Music copyright flags

To use the Software, you must lawfully acquire the Software from Us, or Our authorized resellers. Otherwise you don't have a right to use the Software. You may only purchase and/or download the Software from Wondershare's or its authorized reseller's store, eStore etc. Without obtaining written permission, you are allowed to use the following Master Recording(s) and Composition(s) for non-commercial video within Wondershare(s) software/app environment :
Production: Wondershare - 25 tracks
Works and Artists: "When We Met (with oohs)" by Sea of Cortez
"I Like" by Taylor Buono
"Trees to Stone" and "Everything" by Fremont
"Let It Go" by Circuit Animals
"Go and Breathe" by SUNNE
"Brightly" by The Boy and Sister Alma
"Morning Ace" by Peter Young
"Wait It Out" by Phantom Sun
"Love and Oceans" and "Stars and the Moon" by The Dimes
"Second Son" by Mikey & Matty
"Orange & Red" by Sunbeam
"Our Adventure (Edit)" by The Long Valley

WOND000664

"Pacific Park" and "Refresco" by Belvedear

"Vulgaret" by Continent Drift

"Courtside" by Todd Hannigan

"Three Books" by Those Willows

"Endless Horizon" by More Like Georgia

"Chemical Help" by Tom Bromley

"Sun Dream" by The Little Indians

"Birdseye House", "Simple Deciduous" and "Train Tracks" by Marmoset

"Road Trip" by TigerTeaMusic

"Summer Pop Party Fun" by Top-Flow

"Walk Through Life Upbeat Energetic Song" by pinkzebra

"Larger Than Life" by pinkzebra

"Gamer Music 1" by Filmora

"Gamer Music 2" by Filmora

"Gamer Music 3" by Filmora

"Gamer Music 4" by Filmora

"Gamer Music 5" by Filmora

"Action Hero Anthem" by Filmora

"Adventure Overture" by Filmora

"Dance Anthem" by Filmora

"Pop Boss" by Filmora

"Summer" by Filmora

"Sentimental" by Top-Flow

"Above the Clouds" by Matkojad

"Nostalgic Country" by MatthewTanner

"Christmas" by omegamusic

"Christmas" by Top-Flow

"Merry Christmas" by HitsLab

"Christmas" by plaincask

"Christmas" by yellowbus

"Christmas" by Alec_Koff

"girls_have_many_secrets" by Misti's Fonts

"Viper Squadron" by shyfoundry

"hemmet" by Måns Grebäck

"arcade-classic-2003" by PizzaDude.dk

"Typograph Pro" by Aleksandar_Petkov_Aleksandrov

"Love Moment" by Ijemrockart / Letterplay

"mix-yonder" by mixfonts

Publisher: Artist

Territory: World wide

Term: Perpetual

## 3. RESTRICTIONS ON USE

You may not, and you may not permit others to (a) reverse engineer, decompile, decode, decrypt, disassemble, or in any way derive source code

from, the Software; (b) modify, distribute, or create derivative works of the Software; (c) copy (other than one back-up copy), distribute, publicly display, transmit, sell, rent, lease or otherwise exploit the Software.

**4. COVER CD.**

The reproduction and distribution of Wondershare Software (evaluation copy only) in various Cover CDs published by associated magazines are allowed. However a copy of magazine with CD is required to be sent to Wondershare Software.

**5. TERM**

This License is effective until terminated. You may terminate it at any time by destroying the Software, together with all copies thereof. This License will also terminate if you fail to comply with any term or condition of this Agreement. Upon such termination, you agree to destroy the Software, together with all copies thereof.

**6. NO OTHER WARRANTIES.**

WONDERSHARE SOFTWARE DOES NOT WARRANT THAT THE SOFTWARE IS ERROR FREE. WONDERSHARE SOFTWARE DISCLAIMS ALL OTHER WARRANTIES WITH RESPECT TO THE SOFTWARE, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT OF THIRD PARTY RIGHTS. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES OR LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY MAY LAST, OR THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM JURISDICTION TO JURISDICTION.

**7. SEVERABILITY.**

In the event of invalidity of any provision of this license, the parties agree that such invalidity shall not affect the validity of the remaining portions of this license.

**8. NO LIABILITY FOR CONSEQUENTIAL DAMAGES.**

IN NO EVENT SHALL WONDERSHARE SOFTWARE OR ITS SUPPLIERS BE LIABLE TO YOU FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL OR INDIRECT DAMAGES OF ANY KIND ARISING OUT OF THE DELIVERY, PERFORMANCE OR USE OF THE SOFTWARE, EVEN IF WONDERSHARE SOFTWARE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL WONDERSHARE SOFTWARE LIABILITY FOR ANY CLAIM, WHETHER IN CONTRACT, TORT OR ANY OTHER THEORY OF LIABILITY, EXCEED THE LICENSE FEE PAID BY YOU, IF ANY.

WOND000666

Exhibit B

**UNITED STATED DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PINKZEBRA MUSIC, LLC, | ) | |
| | ) | Case No. 16-cv-11099 |
| Plaintiff, | ) | |
| | ) | Judge:  Hon. Joan B. Gottschall |
| v. | ) | |
| | ) | |
| SHENZHEN WONDERSHARE | ) | |
| INFORMATION TECHNOLOGY CO. | ) | JURY TRIAL DEMANDED |
| LTD., WONDERSHARE SOFTWARE | ) | |
| CO., LTD., ISKYSOFT STUDIO and | ) | |
| AIMERSOFT STUDIO | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT WONDERSHARE'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Shenzhen Wondershare Information Technology Co., Ltd. ("Wondershare"), by and through its attorneys, hereby provides these objections and responses to the First Set of Interrogatories (the "Interrogatories") served by Plaintiff Pinkzebra Music, LLC ("Pinkzebra").

**PRELIMINARY STATEMENT**

1. Wondershare incorporates by reference each and every general objection set forth below into each specific response. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

2. By responding to Pinkzebra's Interrogatories, Wondershare does not waive any objection that may be applicable to: (a) the use, for any purpose, by Pinkzebra of any information given or documents or things identified in response to Pinkzebra's Interrogatories; or (b) the admissibility, relevance, or materiality of any of the information given or documents or things identified to any issue in this case.

1

3.      No incidental or implied admissions are intended by the responses herein.  The fact that Wondershare has answered or objected to any Interrogatory should not be taken as an admission that Wondershare accepts or admits the existence of any "fact" set forth or assumed by such Interrogatory.

4.      Wondershare has not completed its discovery, investigation, research, and trial preparation.  Wondershare's responses to Pinkzebra's Interrogatories are made to the best of Wondershare's present knowledge, information, and belief.  The following responses are given without prejudice to Wondershare's right to produce evidence of any subsequently-discovered facts.  Wondershare reserves the right to further supplement, revise, correct, clarify and/or amend these responses should future investigation indicate that such supplementation, revision, correction, clarification or amendment is necessary.  Wondershare reserves the right to make use of, or introduce at any hearing or trial, information or documents that are responsive to Pinkzebra's Interrogatories, but which are discovered subsequent to Wondershare's service of these responses, including, but not limited to, any information or documents obtained in discovery herein.

5.      Wondershare's objections as set forth herein are made without prejudice to Wondershare's right to assert any additional supplemental objections should Wondershare discover additional grounds for such objections.

**GENERAL OBJECTIONS**

The following General Objections are incorporated into each Specific Response as if fully set forth therein.

1.      Wondershare objects to each and every Interrogatory, definition, and instruction to the extent it seeks to impose any burdens inconsistent with or in addition to Wondershare's

obligations under the applicable rules, including the Federal Rules of Civil Procedure, the Local Rules, or any order of this Court. Wondershare will comply with the obligations imposed upon it by the Federal Rules of Civil Procedure.

2.  Wondershare objects to each and every Interrogatory, definition, and instruction to the extent it calls for information not in Wondershare's possession, custody, or control, and/or not obtainable by means of a reasonably diligent search.

3.  Wondershare objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is already in Pinkzebra's possession or available from a public source as to which the burden of obtaining such information is the same for Pinkzebra as it would be for Wondershare.

4.  Wondershare objects to these Interrogatories to the extent that the burden placed on Wondershare outweighs the benefit to Pinkzebra.

5.  Wondershare objects to these Interrogatories to the extent that they seek to require Wondershare to do more than conduct an examination of those files or sources that reasonably may be expected to yield responsive information or an inquiry of those persons who reasonably may be expected to possess responsive information.

6.  Wondershare objects to these Interrogatories to the extent they require Wondershare to make legal conclusions and/or render expert opinions.

7.  Wondershare objects to these Interrogatories to the extent they seek information not reasonably calculated to lead to the discovery of admissible evidence.

8.  Wondershare objects to these Interrogatories to the extent they are not limited to a specific, reasonable, and relevant time period.

9.     Wondershare objects to these Interrogatories to the extent that they call for any information protected from disclosure by the attorney-client privilege, the work-product doctrine, common interest doctrine, the joint defense doctrine, or any other applicable privilege or immunity.  Inadvertent production of such information shall not constitute the waiver of any applicable privilege, doctrine, immunity, or objection, including, but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, work product, privilege, and/or admissibility as evidence.

10.     Wondershare objects to these Interrogatories to the extent that they call for any information that is protected from disclosure by confidentiality obligations that Wondershare may have to non-parties, its employees, or others.

11.     Wondershare objects to these Interrogatories to the extent that they seek discovery that is more easily available through other sources or less burdensome means.

12.     Wondershare objects to these Interrogatories to the extent that they seek information not within the knowledge of any person under Wondershare's control.

13.     Wondershare objects to these Interrogatories to the extent that they are vague and ambiguous, overly broad and/or unduly burdensome, such that these Interrogatories fail to describe with reasonable particularity the matters on which responses are requested.

14.     Wondershare objects to Pinkzebra's definition of "Wondershare" as vague, overbroad, and unduly burdensome, because the definition includes entities that are separate and distinct from Wondershare. Wondershare further objects to the inclusion of "each of its predecessors, successors, subsidiaries, divisions, assigns, other names or aliases," "each other entity or person directly or indirectly, wholly or in part, owned or controlled by each," and "all present and former partners, principals, employees, officers, agents, legal representatives,

consultants or other persons acting or purporting to act on their behalf" in the definition of Wondershare because Pinkzebra has not identified these entities or persons, and even if it had, their inclusion would make the Interrogatories overbroad and unduly burdensome, by requiring that Wondershare provide information that is not within its possession, custody or control. Moreover, since these entities and individuals are not parties, it is unlikely that any information requested by an Interrogatory would be relevant.

15.    Wondershare objects to Pinkzebra's definitions of "Larger than Life," "Walk Through Life," and "Spooky Fun" as vague and ambiguous.  The only information provided by Pinkzebra relative to these definitions are (1) that each such music track is a "music track owned by Plaintiff," and (2) that such music track has a certain copyright application number. But Pinkzebra has not established ownership of any music tracks and, despite repeated requests, Plaintiff has so far refused to produce a copy of its copyright applications for each such music track, including the deposit material included within such copyright application. Accordingly, the definitions provided for these terms are too vague and ambiguous to enable Wondershare to understand exactly what those terms mean.

16.    Wondershare objects to Pinkzebra's definition of "Asserted Music Tracks" as vague and ambiguous because it incorporates the terms "Larger than Life," "Walk Through Life," and "Spooky Fun," which are themselves vague and ambiguous, as set forth above.

17.    Wondershare objects to Pinkzebra's definition of "United States Customer" as being overly broad and unduly burdensome, because that definition includes any person or entity "whose payment for an Accused Product was initiated, received, or processed in the United States." Many of Wondershare's customers who live in Europe or Asia may have had their payments "received or processed in the United States" if the payment was handled, for example,

by Paypal or Digital River. But such customers never downloaded or received a copy of any asserted music tracks within the jurisdiction of the United States, and U.S. copyright law does not extend extraterritorially merely because a payment processor is based in the United States.

18.     Wondershare objects to each Interrogatory to the extent that it seeks information that is properly the subject of expert testimony in advance of any Court ordered schedule for the disclosure of expert opinions and discovery.

These General Objections are incorporated by reference in each response below and shall not be repeated in every response.  All responses are provided subject to and without waiving these General Objections.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify how Wondershare first learned of the Asserted Music Tracks.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that the term "Asserted Music Tracks" is vague and ambiguous.  Plaintiff has not provided a copy of its copyright application, or its deposit with the Copyright Office.  Plaintiff also has not provided any information showing its authorship of the alleged tracks.  Accordingly, Wondershare cannot determine what exactly Plaintiff contends its original Asserted Music Tracks are.  Wondershare further objects to this interrogatory to the extent it seeks information outside of  Wondershare's possession, custody or control, as Wondershare cannot account for every instance every one of its employees might have come across a particular music track – however unlikely that may be with respect to Plaintiff's asserted music tracks.  Wondershare further objects to this interrogatory to the extent it seeks information subject to the attorney-client privilege.

Subject to the foregoing general and specific objections, Wondershare states that its investigation is ongoing.  Wondershare states that it does not have a record of how it came across

the music tracks at issue in this litigation, but Wondershare does have license certificates from

AudioJungle which reflect the general date and time that Wondershare came across these music

tracks.  These license certificates show that Wondershare obtained a Music Broadcast License (1

Million) for "Spooky Fun" from Audio Jungle on October 14, 2015.  Wondershare believes it

likely first became aware of that track on or around that date.  Wondershare's AudioJungle

license certificates also show that Wondershare obtained Music Mass Reproduction Licenses for

"Larger than Life" and "Walk Through Life" on August 5, 2016.  Wondershare believes it likely

first became aware of those tracks on or around that date.

## INTERROGATORY NO. 2:

Provide the following information for any license that permitted Wondershare to distribute
Plaintiff's music tracks in the Accused Products: (a) the person or entity to whom the license was
granted and the person or entity who granted it; (b) in what capacity each person who granted it
made the grant; (c) the date and place it was granted; and (d) whether it was granted orally or in
writing, and if in writing, the identity of the person who has custody or control of the license.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that it calls for a

legal conclusion as to the legal effect and authorization of the licenses purchased by

Wondershare. Wondershare further objects to this Interrogatory on the grounds that it calls for

information that is not in the possession, custody or control of Wondershare; Wondershare does

not know for certain in what capacity AudioJungle licenses music for Plaintiff, though

Wondershare believes that Plaintiff authorized AudioJungle to enter into licenses on its behalf.

Wondershare also objects on the grounds that this Interrogatory contains multiple subparts, and

thus constitutes multiple interrogatories.  Wondershare objects to this interrogatory as calling for

information which may be determined by examining business records, and the burden of

ascertaining the answer will be substantially the same for Plaintiff as it is for Wondershare.

Subject to the foregoing general and specific objections, Wondershare states that the answers to this interrogatory can be found in the following business records identified pursuant to Rule 33(d) of the Federal Rules of Civil Procedure:

- Music Broadcast License (1 Million) Certificate for "Spooky Fun" from Audio Jungle dated October 14, 2015.

- Music Mass Reproduction License Certificate for "Larger than Life" from Audio Jungle dated August 5, 2016.

- Music Mass Reproduction License Certificate for "Walk Through Life" from Audio Jungle dated August 5, 2016.

- Email correspondence with AudioJungle.

**INTERROGATORY NO. 3:**

Identify the licensor Wondershare consulted with and, the person that Wondershare communicated with, and what was communicated by each person when Wondershare inquired about the scope of the alleged license(s) Wondershare purports to have with Plaintiff.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that it calls for a legal conclusion as to the legal effect and authorization of the licenses purchased by Wondershare. Wondershare further objects to this Interrogatory on the grounds that it calls for information that is no longer in Wondershare's possession, custody or control. Wondershare objects to this interrogatory as calling for information which may be determined by examining business records, and the burden of ascertaining the answer will be substantially the same for Plaintiff as it is for Wondershare.

Subject to the foregoing general and specific objections, Wondershare states that the answers to this interrogatory can be found in the following business records identified pursuant to Rule 33(d) of the Federal Rules of Civil Procedure:

- Email correspondence with AudioJungle.

Wondershare further states that telephone conversations with Audio Jungle may also have taken place, and that it is still investigating this possibility.

## INTERROGATORY NO. 4:

Identify when the Accused Products contained the Asserted Music Tracks, including the date at which the Accused Products first contained the Asserted Music Tracks, and the date when the Asserted Music Tracks were removed from the Accused Products.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that the term "Asserted Music Tracks" is vague and ambiguous. Plaintiff has not provided a copy of its copyright application, or its deposit with the Copyright Office. Plaintiff also has not provided any information showing its authorship of the alleged tracks. Accordingly, Wondershare cannot determine what exactly Plaintiff contends its original Asserted Music Tracks are. Wondershare further objects on the grounds that the term "contained" is vague and ambiguous, and incorrectly suggests that any Accused Product ever inherently included the asserted music tracks. Wondershare further objects to this interrogatory to the extent it seeks information that is no longer in Wondershare's possession, custody or control. Wondershare further objects to this interrogatory to the extent it seeks information subject to the attorney-client privilege.

Subject to the foregoing general and specific objections, Wondershare states that the accused products never contained the music tracks at issue in this litigation. Rather, the music tracks at issue in this litigation were only available through "effects sets" which are separate from the accused products and entirely optional to download. The Summer Collection effects set, which contained many video editing effects in addition to the tracks "Walk through Life" and "Larger Than Life," was first available for download on August 8, 2016. The music track "Spooky Fun" was first available for download on its own on October 22, 2015. "Spooky Fun"

was later incorporated into the Halloween Collection effects set, which also contained other music tracks and video editing effects. The Halloween Collection effects set was first available for download on June 21, 2016. By no later than December 23, 2016, all three of the asserted music tracks were no longer available for download, and/or were removed from the Summer and Halloween Collections.

**INTERROGATORY NO. 5:**

Identify, by product and version number, the number of downloads of the Accused Products by United States Customers since January 1, 2013.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that the term "United States Customer" is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of this case. Plaintiff has cobbled together a definition of "United States Customer" that would include, for example, a Chinese national living in China, who paid for the product with Chinese currency, simply because he/she happened to pay for the product through Paypal's Chinese affiliate. Such transactions are not relevant to this litigation, nor proportional to the needs of this case. Wondershare further objects to this Interrogatory as not being limited to a reasonable and relevant time period. Pinkzebra's request for information dating back to January 1, 2013 is overly broad and unduly burdensome because the alleged infringement could have begun only when Spooky Fun first became available for download on October 22, 2015.

Subject to and without waiving the foregoing general and specific objections, Wondershare's counsel is willing to provide Plaintiff's counsel an opportunity to narrow the scope of this interrogatory to, and will meet and confer regarding the overly-broad scope of this interrogatory at Plaintiff's reasonable request.

**INTERROGATORY NO. 6:**

Identify, by music track title, the number of downloads of the Asserted Music Tracks that have been downloaded and with which Accused Product, including the product and version number.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that the term "Asserted Music Tracks" is vague and ambiguous. Plaintiff has not provided a copy of its copyright application, or its deposit with the Copyright Office. Plaintiff also has not provided any information showing its authorship of the alleged tracks. Accordingly, Wondershare cannot determine what exactly Plaintiff contends its original Asserted Music Tracks are. Wondershare further objects to this Interrogatory as seeking information that is not within Wondershare's possession, custody or control. Particularly, the Federal Rules do not require Wondershare to create new documents which do not normally exist within the ordinary scope of Wondershare's business operations. Wondershare further objects to this interrogatory to the extent it seeks information subject to the attorney-client or work product privileges.

Subject to the foregoing general and specific objections, Wondershare states that it is assessing in what systems and/or documents this information might be found, and whether it is possible to compile this information into an interrogatory response, or alternatively whether underlying data can be made available for inspection pursuant to Rule 33(d).

**INTERROGATORY NO. 7:**

Identify the total revenues generated from Wondershare's sale of the Accused Products to United States Customers, by software version number, for each product sold since January 1, 2013.

**RESPONSE:** Wondershare objects to this Interrogatory on the grounds that the term "United States Customer" is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of this case. Plaintiff has cobbled together a definition of "United States Customer" that would include, for example, a Chinese national

living in China, who paid for the product with Chinese currency, simply because he/she happened to pay for the product through Paypal's Chinese affiliate. Such transactions are not relevant to this litigation, nor proportional to the needs of this case. Wondershare further objects to this Interrogatory as not being limited to a reasonable and relevant time period. Specifically, Pinkzebra's request for information dating back to January 1, 2013 is overly broad and unduly burdensome because the alleged infringement could have begun only when Spooky Fun first became available for download on October 22, 2015.

Wondershare also objects to this Interrogatory as being overly broad, unduly burdensome and seeking information that is irrelevant to the claims or defenses of any party and/or not proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of this Interrogatory in resolving the issues in this case, and the burden and expense of the requested information, which outweighs its likely benefit. Specifically, Wondershare's total revenues from the sale of the Accused Products are wholly unrelated to any Wondershare customer's download of the asserted music tracks. As Wondershare has explained multiple times, the asserted music tracks were not included or "embedded" within the Filmora video editing software package, nor within the iSkysoft or the Aimersoft video editing software packages. Rather, those asserted music tracks were available for download separate and apart from all such video editing software packages, free of charge, such that Wondershare generated zero revenue relative to any customer's download of the asserted music tracks.

Subject to and without waiving the foregoing general and specific objections, Wondershare's counsel is willing to provide Plaintiff's counsel an opportunity to narrow the

scope of this interrogatory to, and will meet and confer regarding the overly-broad scope of this interrogatory at Plaintiff's reasonable request.

**INTERROGATORY NO. 8:**

Identify all of Wondershare's payment processors.

**RESPONSE:** Wondershare objects to this Interrogatory as being overly broad, unduly burdensome and seeking information that is irrelevant to the claims or defenses of any party and/or not proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of this Interrogatory in resolving the issues in this case, and the burden and expense of the requested information, which outweighs its likely benefit. Specifically, the identity of Wondershare's payment processors is unrelated to any issues in this case, and could only have been relevant to Plaintiff's wrongful attempt to freeze Wondershare's assets on the basis of alleged counterfeiting, which allegation is no longer present in this case.

DATED:  April 27, 2017                    Respectfully submitted,


SHENZHEN     WONDERSHARE     INFORMATION
TECHNOLOGY CO. LTD.

By  */s/ Barry R. Horwitz*
    Richard D. Harris
    Cameron M. Nelson
    Barry R. Horwitz
    Weisun Rao
    GREENBERG TRAURIG, LLP
    77 West Wacker Dr., Suite 3100
    Chicago, Illinois 60601
    Tel:  312-456-8400

## CERTIFICATE OF SERVICE

The undersigned hereby certified that a true and correct copy of the foregoing DEFENDANT WONDERSHARE'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES was served upon counsel for Plaintiff on the date set forth below, by email, to:

Adam Wolek
Brian Noack
WOLEK & NOACK
333 S. Wabash Avenue
Suite 2700
Chicago, IL 60604
adaw@wonoip.com
briann@wonoip.com
Counsel for *PINKZEBRA MUSIC, LLC*

Dated: April 27, 2017                                     /s/ Barry R. Horwitz_____

**Verification**

I, ___Ni Qin_____, for and on behalf of Shenzhen Wondershare Information Technology Co., Ltd. ("Wondershare"), hereby certify that:

I am duly authorized to execute this Verification on behalf of Wondershare.

I have read Wondershare's Response to Plaintiff's First Set of Interrogatories and I am familiar with the factual statements therein. To the best of my knowledge, information and belief formed after a reasonable inquiry under the circumstances, the statements made therein are well-grounded in fact.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:  April _26__, 2017

Name: _____