UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PINKZEBRA MUSIC, LLC )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SHENZHEN WONDERSHARE INFO. TECH. CO. )<br>LTD., AND WONDERSHARE SOFTWARE CO., )<br>LTD., ISKYSOFT STUDIO, AND AIMERSOFT )<br>STUDIO )<br>Defendants. )<br>) | Case Number: 16-cv-11099<br><br>Hon. Joan B. Gottschall<br><br>Mag. Judge Sheila M. Finnegan<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUR-REBUTTAL IN SUPPORT OF ITS
MOTION FOR AN ADVERSE INFERENCE AND
TO COMPEL DISCOVERY COMPLIANCE**

Pursuant to this Court's October 5, 2017 order, Plaintiff files this brief Sur-Rebuttal in Support of its Motion for an Adverse Inference and to Compel Discovery Compliance.

Defendants continue to attempt to avoid the consequences of their delinquent and deficient production by mischaracterizing their production, Plaintiff's statements, and the timeline of events in this litigation. Defendants also seek to justify their late production by pointing a finger at Plaintiff. These tactics are unavailing; the facts remain the same— Defendants have failed to produce key documents in this litigation and only produced many other requested documents after five meet-and-confers (in which Plaintiffs repeatedly asked that these materials be produced), the close of discovery and Plaintiff's filing of the instant motion to compel. Under these circumstances, the Court should allow for an adverse inference that the accused products contained Plaintiffs' music, Defendants should be compelled to produce the outstanding documents, and Plaintiff should be awarded its reasonable expenses, including

attorney's fees, expended in obtaining these documents. *See* Fed. R. Civ. P. 37; *Peerlus Indus., Inc. v. Crimson AV, LLC*, 2012 WL 2502715, at *2-3 (N.D. Ill. June 27, 2012).

***First*,** Defendants production is deficient, as it is missing key documents central to the issues in this case. Indeed, Defendants concede they did not produce a series of key emails where Plaintiff denied them a license to his music. Dkt. 92-1, at 7, 9; *cf.* Dkt. 84, Exh. A at PZ000094 (denying Defendants a license). The emails reveal that Defendants made a request for a license to Plaintiff's music, but were denied such rights. Dkt. 84, Exh. A at PZ000094. Defendants also have not produced a version of the End User License Agreement ("EULA") in which they claim rights to Plaintiff's songs. Dkt. 84, at 2, 7-8, Exh. B. In their Sur-Reply, Defendants falsely claim to have produced this key document. Dkt. 84, at 2, 7-8, Exh. B (PZ0000737-40); *cf.* Dkt. 92-1, Exh. A. While Defendants did produce a similar EULA after Plaintiff filed this Motion (Dkt. 92-1, Exh. A), the document produced is a different version of the EULA at issue—it is not the same document. The existence of multiple versions of this EULA is important, as it further shows that Defendants continued to improperly claim rights to Plaintiff's songs despite creating new versions of their license agreements with their end users.[1] These are some of the most important documents in this case, and go to the heart of the dispute between Defendants and Plaintiff. Yet Defendants have failed to produce them.

***Second***, Defendants' production was also inexcusably late. For instance, Defendants did not produce any of the accused products by the end of fact discovery on August 18 or by the time this Motion was filed on September 11, 2017. Plaintiff waited over five months, had five meet-and-confers, sent Defendants a letter, and agreed to multiple production deadlines. None of

---

[1] Defendants claimed rights to Plaintiff's music in various versions of their EULA despite their purported license explicitly prohibiting this activity. Dkt. 84, Exh. D at PZ0000694-95 (prohibiting redistributing music tracks or using for more than one end use). This is, of course, assuming Defendants had such a license in the first place, which is disputed and has not been shown.

Plaintiff's efforts resulted in Defendants' production of the accused products (or other requested documents) prior to, or even after, the close of discovery. Indeed, in Plaintiff's last letter and the August 31, 2017 meet-and-confer, Plaintiff set September 5, 2017 as a final extended deadline for production, yet still no documents were produced. It was only after Plaintiff filed this Motion that suddenly Defendants found the urgency to produce the accused products and other materials Plaintiff had been requesting for nearly half a year.

Defendants seek to obscure and excuse their late production, by misstating the timeline of events in discovery and raising Plaintiff's production as a red-herring argument. For example, the following chart and corresponding citations highlight some of the misleading allegations made by Defendants in the Sur-Reply:

| Defendants' Allegations, at Dkt. 92-1, at 2 | Plaintiff's Statements & the Record |
|---|---|
| "Plaintiff suggests that it has been pushing Wondershare to produce the requested software products for over five months, and that its motion was 'a culmination of many months of efforts and conferences by Pinkzebra (Rep. Br. At 2), even though Plaintiff did not mention Request No. 5 or ask for copies of the accused software products at all between April 2017 and July 2017." | • Dkt. 76, Exh. B, at 9, Req. No. 5 (requesting accused software, from March 24, 2017 requests); <br>• Meet-and-confers: Apr. 28, Aug. 17, 24, 28 and 31 (all discussed and request accused software); <br>• Dkt. 76, Exh. A, April 29 Letter; |
| "Plaintiff asserts that 'documents were not produced for Request No. 15, which relate to Wondershare's copyright licensing policy and practices' (Rep. Br., at 8), even though Wondershare produced, in both English and Chinese, the earliest document outlining its copyright licensing policy on August 15, 2017." | • "Defendants have only produced two documents—one of which is simply a Chinese copy of the other—in response to [Req. No. 15]" Dkt. 76, at 7. <br>• "When Pinkzebra protested about the deficient production, Defendants told Plaintiff that all such documents were already produced. Yet after Pinkzebra filed its motion, over 5 months after it was requested, and after fact discovery ended, Defendants produced additional copyright licensing policies directly related to its claimed defenses." Dkt. 84, at 8. |

| | |
|---|---|
| "Plaintiff falsely claims that Wondershare 'failed to produce [its communications with Envato] during fact discovery' (Rep. Br. At 8), even though Wondershare produced the relevant communications on July 14, 2017—before Pinkzebra had produced a single document." | • "Defendants have only produced three emails in response to Pinkzebra's Requests Nos. 17 and 18" Dkt. 76, at 8. Defendants failed to produce numerous correspondences with Envato that Plaintiff learned of through a properly submitted subpoena under the Hague Convention to Envato. Plaintiff can produce these to the Court upon request. |
| "Plaintiff states: 'Defendants' chart concedes they refused to produce many documents from the requests' (Rep. Br. At 3), when Wondershare made no such concession, and simply could not identify or locate documents responsive to many requests after a reasonable search" | • *See*, e.g., Dkt. 81, at 6, responses to Request Nos. 37, 38, 39 (stating they refused to produce documents) |

The Court has all the information it needs in the record to determine that Defendants have neither been diligent in their productions in this matter nor forthcoming in their filings on this Motion. In light of Defendants' failure to produce documents and production after the Court's August 18, 2017 deadline for fact discovery, including of the accused products at issue, Plaintiff respectfully requests that, in line with Fed. R. Civ. P. 37 and the cases cited in Plaintiff's Reply (Dkt. 84, p. 10), this Court grant the Motion for Adverse Inference and to Compel, order Defendants to produce all remaining responsive documents within fourteen days, and award Plaintiff its reasonable expenses, including attorney's fees, expended in obtaining these documents, along with any other relief the Court deems appropriate.

Dated: October 18, 2017 RESPECTFULLY SUBMITTED,

/s/ *Adam Wolek*

Adam Wolek
Brian Noack
Allison E. Czerniak
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713
Tel: 312.836.4063 / Fax: 312.966.8598
awolek@taftlaw.com
*Counsel for Plaintiff Pinkzebra Music, LLC*

4

**CERTIFICATE OF SERVICE**

I, Adam Wolek, an attorney of record in this matter, hereby certify that on October 18, 2017, I caused a copy of the foregoing ***Plaintiff's Sur-Rebuttal in Support of its Motion for an Adverse Inference and to Compel Discovery Compliance*** to be filed with the Court's CM/ECF system, which provides notice to all counsel of record via electronic mail.

/s/ *Adam Wolek*